## DELOS A. BLODGETT v. THE CITY OF MUSKEGON.

*Partnership property—May be assessed in firm name after death of one copartner, if the business is continued in the firm name by the executor and surviving partner.*

Plaintiff and one Thomas Byrne were copartners, carrying on a lumbering business under the firm name of Blodgett & Byrne, their mill and office being located in the city of Muskegon. On January 26, 1882, Byrne died, leaving a will, in which he directed " that the partnership business be carried on by his executor and plaintiff for so long a time as was necessary to convert the assets into money, by the

methods and processes usual in the business thereof, and without loss or sacrifice to his estate or copartner, " limiting the time to twelve years. He authorized his executor " to represent the interest of the estate in the firm, and do every act and thing pertaining to the carrying on and settling up of the business thereof that he could have done if living; and in case of plaintiff's death within the twelve years, to continue the business with plaintiff's legal representative for the unexpired term, or so much thereof as might be necessary."

The will was duly admitted to probate, and George Hume appointed executor, who entered upon the discharge of his trust; and thereafter the firm business was carried on the same as before Byrne's death. A logging railroad was built, a store run, and the books and bank-account kept in the old firm name, in which checks were drawn on such account for the payment of expenses. The old signs were retained, and the profits of the business treated as partnership profits.

In 1882 the firm property was assessed in the name of " Blodgett & Byrne," and the tax paid without objection. In 1884 an assessment was made in the firm name of personal property valued at $105,000 (which was raised by the board of review to $150,000), plaintiff objecting to such assessment on the ground that the title to the logs, which formed the major part of the assessment and which were not within the city limits, should have been assessed to *him* in the city of Grand Rapids as *surviving partner*, that being his place of residence, and the legal title to said property being in him as such surviving partner. He paid the tax under protest, and brought suit against the defendant to recover the money paid.

*Held*, that while it is true that the *legal* title to copartnership property is said to vest in the surviving partner, it does not become his absolutely, but he holds such title *only* for the purpose of closing out the partnership business.

*Held*, further, that under the facts in this case, the property was legally assessed in the firm name, it being really partnership property.

Error to Muskegon. (Russell, J.)    Argued February 11, 1886.    Decided April 15, 1886.

Assumpsit.    Plaintiff brings error.    Affirmed.    The facts are stated in the opinion and head note.

*Norris & Uhl*, for appellant:

The manner in which the business was carried on showed unequivocally that Hume was not a partner but an employe of plaintiff at a salary ; and the name under which the business was conducted—" Blodgett & Byrne "—would indicate to the world, knowing of the latter's death, that the business

of the late firm was being wound up there, and not that a new partnership had been formed with the executor. Its holding out to the world could extend no farther.

"Estoppels never arise from ambiguous facts, but must be established by such as are unequivocal, and not susceptible of two constructions:" *Fredenburg v. Lyon Lake M. E. Church*, 37 Mich. 478.

The city of Muskegon gave no credit to plaintiff on account of his using the firm name. A tax is not a contract, but an arbitrary imposition; and plaintiff owed no duty to the city to give it notice of the dissolution : *Washburn v. Walworth*, 133 Mass. 499.

No unfavorable inference can be drawn from the fact of Hume being executor at the same time that he was an employe, managing for the survivor. As executor, he had a right to know how the closing out of the business was proceeded with ; in certain events it might be his duty to interfere and get the business into the hands of a receiver. And he had a right to an account for profits, but his receiving the estate's share, as executor, or any other dividend, would not make him a partner. Hume was acting *under* contract with the survivor for a salary, and not *with* him as a partner sharing the profits.

"It is quite certain that no mere interference with the affairs of a partnership, no advice in respect to them, not even the right or the duty of interference, advice, or control, as part of an express contract, can *alone* make a party chargeable as a partner :" Pars. on Part. (2d Ed.) 154.

Plaintiff owned the logs that were in Roscommon and vicinity, and which were included in the assessment. It is well settled in Michigan "that the entire legal estate vests" in the surviving partner : *Barry v. Briggs*, 22 Mich. 201–6 ; *Bassett v. Miller*, 39 Id. 133.

No argument in favor of a partnership with the executor can be drawn from Blodgett's use of the old firm name. Whenever we see the firm name in this business, we know it stands for him : *Boyce v. Danz*, 29 Mich. 146 ; *Jenness v. Carleton*, 40 Id. 346.

That plaintiff was not an inhabitant of the city of Muskegon on the second Monday in April, 1884, will be conceded. The logs up the river and outside that city were not assessable in it, and the judge should have so charged the jury.

By section 5, act No. 9, Sess. L. of 1882, p. 8, "A copartnership shall be treated as an individual &ast; &ast; &ast; and shall be deemed to reside in the township where its business

is principally carried on;" but we submit that has no application to the case at bar. Byrne died in January, 1882. There were no partnership articles, there had been no time fixed for the partnership to continue, and the proposition contained in Byrne's will to continue it was not accepted by plaintiff; upon such a state of facts, the copartnership ceased to exist *immediately* at the death of Byrne: Coll. on Part. (6th Ed.) § 101, pp. 151-2, and cases there cited in note under head "Death of partner;" *Roberts v. Kelsey*, 38 Mich. 602-6; *Jenness v. Carleton*, 40 Id. 343-6.

The estate is no part of the firm, and never was: *Chittenden v. Witbeck*, 50 Mich. 415; and it follows as matter of law, as well as fact, that on the day of assessing in 1884, there was no such firm as Blodgett & Byrne existing.

The Legislature will be presumed to have enacted section 5 in view of the law of partnership. To extend the effect of that section so as to embrace the survivors, would be doing violence to the language employed.

The court erred in charging the jury that the fact that Blodgett & Byrne paid the taxes for the year 1882 without protest should have weight in showing that at that time the plaintiff claimed that the copartnership continued in existence; and also in overruling plaintiff's objections to receiving the evidence of such payment. The payment of the taxes of 1882 was a matter immaterial to the issue. It did not touch the validity of the tax of 1884, or the plaintiff's duty in 1884 to pay any tax whatever.

Both taxes, 1882 and 1884, were illegally assessed. Where a firm is dissolved, it is no longer assessable as such: 1 Desty on Tax. 298, citing *Von. Phul v. N. O.*, 24 La. Ann. 261.

*William Carpenter*, for defendant:

Section 5, Tax Law of 1882, under which this assessment was made, provides that, "for the purposes of assessing property and collecting taxes, a copartnership shall be treated as an individual, and whenever the name of the owner or occupant of property is required to be entered upon the assessment roll, if such property is owned or occupied by a copartnership, the firm name shall be used. A copartnership shall be deemed to reside in the township where its business is principally carried on. Each partner shall be liable for the whole tax;" hence, if the firm of Blodgett & Byrne had any existence on the second Monday of April, 1884, the assessment is valid.

The death of a partner does not work an absolute dissolu-

tion.   The firm still continues for the purpose of closing up
the business, paying the debts, and dividing the property : 3
Kent's Com. 57, 63, 64; Collyer on Partnership, §§ 106, 107,
580; *Ex parte Williams*, 11 Ves. 3; *Crawshay v. Collins*,
15 Ves. 227; *Peacock v. Peacock*, 16 Ves. 57; *Butchart v.
Dresser*, 4 DeG. M. & G. 542; *Robbins v. Fuller*, 24 N. Y.
570; *Payne v. Slate*, 39 Barb. 634; *Van Doren v. Horton*,
19 Hun, 7; *Van Keuren v. Parmalee*, 2 N. Y. 525; *Gan-
nett v. Cunningham*, 34 Me. 56; *Milliken v. Loring*, 37 Me.
408; *Petrikin v. Collier*, 1 Penn. St. 247; *Estates of Davis
and Desauque*, 5 Whart. (Penn.) 530; *Oliver v. Lynn*, 130
Mass. 143.

It makes no difference what were the purposes of its exist-
ence, or what the power of the survivor or of the executor.
If the partnership business was not yet wound up, and there
was partnership property liable to be assessed, the assessment
was valid : *Oliver v. Lynn*, 130 Mass. 143.

The residence of the firm could not be changed merely by
the death of a partner, as long as its principal office remained
unchanged and the business was carried on in the same
name and manner as before; and the change in title due
to Mr. Byrne's death did not change the nature of the firm
property.   It remained partnership property as much as it
was before his death.   No separation of the interests in it
was made, and it was assessable as before : *Oliver v. Lynn*,
Id.

The actual status of partnership property does not depend
on the technical legal title, nor does its ultimate disposition.
That fact has been recognized by the plaintiff and the execu-
tor in this case, who have recognized and treated the property
of Blodgett & Byrne as copartnership property in all their
dealings with it.

The other question in the case is whether a new copartner-
ship was formed between Mr. Blodgett and Mr. Hume, as
executor of Byrne's will.   This was a question of fact for
the jury:   Parsons on Partnership, 7; *Chamberlain v. Jack-
son*, 44 Mich. 320; *Hadden v. Shortridge*, 27 Mich. 212;
*Hinman v. Littell*, 23 Mich. 484; and the jury found that a
copartnership was formed.

As surviving partner merely, it was Mr. Blodgett's duty
to proceed at once to convert the firm property into cash, pay
the firm debts, and distribute the balance to those entitled
thereto ; in other words, to close out the business.   And if he
delayed in so doing, the deceased partner's representatives
could demand that the property be sold for cash to pay the

debts and close the business : *Evans v. Evans*, 9 Paige Ch. 178; *Crawshay v. Collins*, 15 Vesey, 227.

His right to carry on the business as he did was derived solely from Mr. Byrne's will, and that will is the basis of the claim that a copartnership existed which was the owner of the property assessed. It is competent for a partner to provide by will that the copartnership shall continue after his death, and if the provision is assented to by the survivor the partnership continues in existence: *Pitkin v. Pitkin*, 7 Conn. 314; *Burwell v. Cawood*, 2 How. (U. S.) 576; *Crawshay v. Collins*, 15 Vesey, 227; *Labouchere v. Tupper*, 11 Moore P. C. C. 198; *Jones v. Walker*, 103 U. S. 444; *Smith v. Ayer*, 101 U. S. 320; *Laughlin v. Admr. of Lorenz*, 48 Penn. St. 275.

The will thus became both material and relevant, as it tended directly to establish a partnership between plaintiff and Byrne's executor, and was an important fact for that purpose. The plaintiff and Mr. Hume both declare that no such assent was ever given; and if assent could be given only in express words, their testimony might be conclusive on this point of the case. But such assent may be shown by the acts of the parties as well as by their words: Parsons on Partnership (3d Ed.) pp. 7, 477; 5 Wait's Actions and Defenses, 106; *Manning v. Gasharie*, 27 Ind. 399; *Robbins v. Laswell*, 27 Ill. 365; *Hadden v. Shortridge*, 27 Mich. 212; and the partnership may exist, even though the parties do not intend it (*Beecher v. Bush*, 45 Mich. 193; *Whipple v. Parker*, 29 Id. 369, 380), or have an express understanding to the contrary : *Hinman v. Littell*, 23 Id. 484.

MORSE, J. This is an action in *assumpsit* to recover taxes paid upon personal property assessed to " Blodgett & Byrne," the same having been paid under protest after levy.

The firm of Blodgett & Byrne (before the death of Byrne) were doing business, and had a saw-mill and office, in the city of Muskegon.

Byrne died in January, 1882, and the taxes for that year were assessed in Muskegon in the name of Blodgett & Byrne, and were paid without any demur or protest.

There is no showing in the record as to the taxes of 1883.

In 1884 the real estate in Muskegon was assessed to "Blodgett & Byrne," but there is no complaint made as to this. There was also an assessment in the name of " Blod-

gett & Byrne," as follows: "Personal, lumber, lath, logs, and slabs," at the value of $105,000, which the board of review increased to $150,000.

The tax upon this assessment was $5,105.62, which the plaintiff paid under protest. Some of this tax, being for personal property admitted to be situate in the city of Muskegon at the date of the assessment, was assumed to be legal.

The amount claimed to be illegal was $4,697.11. This was the amount of the tax upon the value of the personal property outside of the city of Muskegon, as claimed by plaintiff, when the assessment was made. This he claims should have been assessed to him as surviving partner and at Grand Rapids, where he resided. The judgment in the court below, upon a verdict of a jury, was for the defendant, and the plaintiff brings error.

The protest filed at the time of the payment of the tax by plaintiff set forth a large number of reasons why the tax was claimed to be illegal, but upon the trial in the circuit, and on the argument in this Court, the errors relied upon as to the admission of evidence and the instructions to the jury are reduced to three propositions, namely :

*First.* The enlarging of the amount of the assessment by the board of review was illegal.

*Second.* The property was not liable to assessment in the partnership name (the copartnership was dissolved by the death of Byrne, and the legal title became at once vested in the plaintiff, the survivor, to whom it should have been assessed).

*Third.* The court erred in allowing evidence as to whom the tax was assessed in 1882, and the payment of it, and in instructing the jury that, if they found that an arrangement had been entered into by plaintiff and Byrne's executor to continue the old copartnership, or to form a new one, in accordance with the desire expressed in the will of Byrne, for the period of twelve years from his death, then the assessment might be sustained as made ; and in admitting the will of Byrne, and some other evidence tending to show such an arrangement.

We think the action of the board of review was valid. Indeed, this alleged error does not seem to be relied upon in

this Court. The agent of the plaintiff, his son, appeared before the board, and admitted that it was not more than the value of the property assessed, but demurred to their action on the ground that the property was not liable to assessment in the city of Muskegon.

We are also of the opinion that the property was rightfully assessed in the city of Muskegon, and in the name of Blodgett & Byrne.

Instead of simply closing out the business upon the death of Byrne, the plaintiff's own evidence shows that the business of cutting logs and manufacturing the timber went on after the death of Byrne the same as before.

A logging railroad of considerable extent was built; a store at Roscommon was run in the name of Blodgett & Byrne; the company books were kept as before; the checks in payment of expenses were drawn upon the bank-account in the name of the old firm; the old signs were retained; the profits in lumbering were treated as partnership profits; in fact, the business was being operated and carried on precisely as it was before the death of Byrne, saving his presence and management. Blodgett testifies:

" *Question.* Has the business been carried on since Mr. Byrne's death in any different manner from what it was when he was alive ?

*Answer.* I was thinking how to answer the question. It is a difficult matter.

*Q.* You can answer that question by 'yes' or 'no,' I think.

*A.* Yes, sir; it has been carried on in a different manner if I have got to answer that 'yes' or 'no.'

*Q.* In what respect ?

*A.* Before Mr. Bryne's death we were adding to our stock,—buying timber. Since Mr. Byrne's death, I have been closing this up,—cutting off the timber, and paying for it as it matured.

*Q.* Is it different in any other respect ?

*A.* Yes, sir.

*Q.* In what ?

*A.* I have taken the management of it. Mr. Byrne was the manager of it during his life, and I was a sort of silent fellow, and frequently said I stood at the back of it.

*Q.* Is it different in any other respect?
*A.* I don't know that it is. I don't think of anything now. Nothing that I can recollect."

He admits that the saw-mill has run just as it did before Byrne's death, and he don't know but they have been sawing for other parties, and that the accounts with parties with whom they had been dealing were made in the name of Blodgett & Byrne. The whole tenor of the testimony is in the same direction. If the business is being carried on in the name of Blodgett & Bryne in every detail, why should not the assets and property of the business be assessed and taxed in the same name?

The statute under which the assessment was made provides:

" For the purposes of assessing property and collecting taxes, a copartnership shall be treated as an individual, and whenever the name of the owner or occupant of property is required to be entered upon the assessment roll, if such property is owned or occupied by a copartnership, the firm name shall be used. A copartnership shall be deemed to reside in the township where its business is principally carried on. Each partner shall be liable for the whole tax:" Section 5, Tax Law 1882 (How. Stat. App. 1266).

It is not pretended that plaintiff paid any tax upon this property elsewhere. It seems like a desire to avoid the payment of any tax upon the property of Blodgett & Byrne by the use of technicalities in terms which do not exist, and have no foundation in principle.

It is true that the courts say that the legal title to copartnership property vests in the survivor at once upon the death of the other partner, but it does not mean that the property becomes his absolutely by any means. While he holds the technical legal title, it is only for the purpose of winding up and closing out the partnership business. The property belongs in equity to the partnership business, the same as it did before, and he must render a fair and just account of it to the heirs or legal representatives of his deceased partner, who have an equitable interest in the property. The surviving partner is a trustee, and bound to manage and dispose

of the property for the best interests of his deceased partner's estate: *Heath v. Waters*, 40 Mich. 457; Pars. Part. (2d. Ed.) § 440, p. 458–9; *Case v. Abeel*, 1 Paige, 398.

At the time this tax was levied the affairs of the copartnership had not been wound up. Whatever tax the plaintiff paid on account of the partnership property would not be paid out of his own pocket, but out of the assets of the firm.

Under a statute nearly like our own in Massachusetts, and where a copartnership had been dissolved by its members, and after such dissolution, but before the business was wound up, the property of the partnership was taxed in the firm name, the court held the tax valid, on the ground that such dissolution did not exempt the firm property from taxation. It did not work a division or separation of the property, so that the share of each partner could be taxed to him. The court also held that, for the purposes of taxation, the firm continued to exist until its affairs were closed up, or the firm property disposed of: *Oliver v. Lynn*, 130 Mass. 143.

It appears very plainly to me that this business, running and managed entirely in the name of Blodgett & Byrne, and thus kept entirely distinct and separate from plaintiff's other property and business, as it properly should have been considering the fiduciary character of his legal ownership of it, was legally taxable as the property of Blodgett & Byrne; and the policy and principle of the statute in relation to the taxation of partnership property where its principal office is located, and its books kept and attainable by the assessor, is best subserved by such a holding. It is really partnership property. The tax is laid upon and to be paid out of the partnership funds, and the mere fact of the technical legal title, for the purposes of closing out the business, being in the plaintiff by reason alone of his survivorship, should not be allowed to furnish an avenue through which to escape taxation, or even to remove from the city of Muskegon, where the business is done, the benefits of the revenue to which it is justly entitled.

In this view of the case it becomes unnecessary to discuss

the other allegations of error, as the verdict and judgment should have been for the defendant upon the plaintiff's own showing, without reference to the question of the formation of a new copartnership, or the continuance of the old one by an arrangement with Byrne's executor. The judgment is therefore affirmed, with costs.

SHERWOOD, J. concurred.

CAMPBELL, C. J. While I concur in affirming the judgment below, I do so because I think there were facts which would justify the belief that there was a partnership continuing actually between Blodgett and Byrne's estate. The continuance of the executor in the apparent conduct of the business, coupled with authority by will to continue it, would, under all the circumstances, I think, justify the assessors in so determining, and sustain the verdict. But I do not think that the possession by a surviving partner of assets, in whatever way he may see fit to manage them, is in law or in fact a copartnership. In law the property is his own. In equity he has some duties in regard to it which put him under some of the obligations of a trustee, but no one else has any control or custody of the assets. The statute does not make trustees assessable on any different footing than others on such property as this.

The assessment of personal property must generally be, not only under the statutes, but on general legal principles, where the owner resides, and where his property is made constructively to follow his person. The only exception ever made to this is where property is in such a shape that it may be taxed where it is found present in fact. Our tax law is governed throughout by this rule.

No contest is made in this case over the right of the city of Muskegon to tax the property locally within its limits. The only question is, where should personal property be taxed which is not in Muskegon? The law says it must be taxed where its owner resides. It gives to a "copartnership" the position of an "individual." But it does not give to an

individual a double residence or a double existence. If there is no actual copartnership in Muskegon, and if Mr. Blodgett does not reside there, the property cannot be taxed there. But if he was in partnership with Byrne's executor, he was an actual and not a surviving partner. This was, I think, fairly left to the jury.

CHAMPLIN, J. did not sit in this case.