EDWARD SWIFT v. GEORGE G. MEAD AND ROBERT J.
FLEMING.

*Partnership—Death of one member and continuation of business by his son
and the survivor in old firm name—Note given by son in such name—For
purposes of business—And transferred before maturity to bona fide
holder— Who presents it after maturity to son and surviving partner—
Who both admit its genuineness—Is their joint obligation.*

After the death of *one* of *two* copartners, who had been the active man in the
business, an *adult* son took his place, and the business was continued
in the *old* firm name, but without new articles of partnership, said
son contracting debts and executing notes in such firm name in carry-
ing on said business, with the full knowledge of the surviving part-
ner, one of which notes was indorsed by the payee, before maturity,
to a *bona fide* holder. After its maturity the indorsee presented the
note to the son, who acknowledged its genuineness and promised to
pay the same, but desired to exchange for it the note of a new firm
of which he was a member, which had then succeeded to the busi-
ness, which proposition was declined by the indorsee, who, before
bringing suit against the surviving partner and son of the deceased
member of the firm, presented the note to the surviving partner,
who admitted its execution as hereinbefore stated, but declined pay-
ment because he had been indemnified by the *new* partner, who had
purchased *his* interest in the firm business, against all such claims.

*Held,* that the note was the *joint* obligation of the surviving part-
ner and son, and that plaintiff was entitled to a judgment for the
amount due thereon.

Error to Ingham. (Gridley, J.) Argued June 24, 1886.
Decided July 1, 1886.

Assumpsit. Defendants bring error. Affirmed. The
facts are stated in the head-note.

*Smith & York,* for appellants :

Persons may become *jointly* liable as partners to *third*
persons by such dealing and conduct as import a partnership,
and may be joined in a suit, but the declaration should not
aver the liability as a copartnership unless it is in fact such :
2 Greenleaf on Ev. § 483.

There is no claim that an *actual* copartnership ever existed,

hence the facts found do not support the declaration. There are only two ways of contracting the joint liability : Collyer on Part. § 78.

*M. D. Chatterton,* for plaintiff :

May 19, 1886, defendant Mead paid the judgment rendered below, and plaintiff has no further interest in the prosecution of this suit. Appellants' attorneys have had notice of such payment.

SHERWOOD, J. This case is an action of assumpsit upon a negotiable promissory note given to Amos Finch or order, on the twenty-eighth day of July, 1883, for the sum of $418.32, payable in one year from date, and subsequently indorsed to the plaintiff before due. The note was signed "MEAD & FLEMING."

The declaration was against the defendants as copartners, and consisted of the common counts.

The defendants pleaded the general issue, and the defendant Fleming accompanied this plea with his affidavit denying the execution of the note; also the existence of any partnership between the defendants.

The cause was tried before Judge Gridley at the Ingham circuit, without a jury, who, on request of counsel for the defendants, found the facts as follows :

" 1. That for several years prior to the decease of Stanhope Fleming (the father of said Robert J. Fleming), he and the defendant George G. Mead were engaged as copartners in the business of running a flouring-mill, and doing a a general business in buying and selling wheat and other grain, and in the manufacturing of flour, at Williamston, in the said county of Ingham, and that they carried on such business under the firm name of Mead & Fleming.

" 2. That the said defendant George G. Mead, during all the time of the existence of said copartnership, resided at Mason, in said county, and the said Stanhope Fleming resided at Williamston aforesaid, and had the general charge of the carrying on of said business; while the said defendant George G. Mead, so residing at Mason, did not take an active part in the carrying on of the same.

" 3. That the said Stanhope Fleming died in one of the

years 1876, 1877, or 1878, after which time the said business was carried on in the same name of Mead & Fleming, and up to the time of the making of the promissory note hereinafter mentioned, at Williamston aforesaid, and the said Mead still continuing to reside at Mason aforesaid, and the defendant Robert J. Fleming, who, being the oldest son of said Stanhope Fleming, deceased, was engaged actively in the place of his father in carrying on said business; but no new articles of copartnership were formed between the said George G. Mead and Robert J. Fleming, or any other persons, but the business was continued in the same way that it had been before the decease of the said Stanhope Fleming; that during the period last aforesaid grain was bought and sold, and debts were contracted, and notes were executed, in the carrying on of said business by the said Robert J. Fleming, in the name of Mead & Fleming, which fact was well known to the defendant George G. Mead.

"4. That the said Robert J. Fleming made and executed the note in question at the date thereof to Amos Finch; and that the said note was given for the use and benefit of the said milling business so carried on at Williamston aforesaid, in the name of Mead & Fleming, and was made to secure a debt contracted by said Robert J. Fleming in the name of said firm to the said Amos Finch.

"5. That afterwards, and before the said note became due, the same was transferred, by the indorsement of the said Amos Finch, to the plaintiff in this cause, and he became the owner of said note without notice of any defense thereto, and became a *bona fide* holder thereof.

"6. That after the maturity of said note the same was presented to the said defendant Robert J. Fleming for payment, and he then and there acknowledged the same to be a genuine instrument, and promised to pay the same; but desired that the plaintiff would exchange the same for a new note, to be given by Grimes & Fleming, a new firm, which had taken the place of and was carrying on the business in which the said firm of Mead & Fleming had theretofore been engaged, of which new firm he, the said Robert J. Fleming, was then a member; but which proposition the plaintiff declined to accept.

"7. That after the maturity of said promissory note, but before suit was brought upon the same, it was presented to the defendant George G. Mead, who acknowledged that the same was given by the said defendant Robert J. Fleming in the carrying on of said business in the name of Mead & Fleming

.after the decease of said Stanhope Fleming, and payment of the same demanded ; but the said George G. Mead declined to pay the same because he had been indemnified by a bond of said Grimes, who had purchased his interest in the said business, to protect him from the payment of the claims against the said firm of Mead & Fleming, and which had been contracted by the said Robert J. Fleming in said firm name after the decease of his said father."

Upon these facts the court found, as matter of law, that the note was the joint obligation of the defendants, and rendered judgment accordingly for the plaintiff.[1]

We think the judgment fully supported by the findings, and must be affirmed.

The other Justices concurred.

---

[1] See *Blodgett v. City of Muskegon*, 60 Mich. 580.