[Parker v. Parker.]

# Parker *v.* Parker.

*Bill in Equity for Settlement of Partnership Accounts and Administration.*

1. *Parties to bill for settlement of administration.*—Infants are necessary parties to a bill which seeks a settlement of the administration of the estate of an intestate of which they are distributees, or the accounts of a partnership of which he was a member, the surviving partner being his administrator.

2. *Partnership property on dissolution by death.*— On the dissolution of a partnership by the death of one of the partners, the title to the personal assets devolves on the survivor, first for the payment of debts, and the residue for distribution among the next of kin ; and the title to the real estate vests in the heirs. subject in equity to be converted into partnership assets, and used for partnership purposes.

3. *Non-joinder of necessary parties.*—The non-joinder of necessary parties is available on error, or the objection may be taken by the court *ex mero motu.*

4. *Guardian ad litem for infants; allowance for solicitor's fees.*—When infants are necessary parties to a chancery suit, their interests can only be represented by a guardian *ad litem,* and a person who has an adverse interest to them, however slight, can not properly act as guardian *ad litem* ; and when they are not properly represented by a guardian *ad litem,* an allowance for solicitor's fees, for services rendered them, is improper and erroneous.

5. *Improvements erected by surviving partner on partnership property.* If the surviving partner erects valuable improvements on real estate which belonged to the partnership, the respective interests of himself and the heirs of the deceased partner in the property may be ascertained and determined in a suit for a settlement of the partnership accounts, without a partition of the property ; and he can not charge the heirs with their share of the expenses incurred in making the improvements, in the absence of an express agreement on their part, or such a course of dealing as evidences an implied agreement.

APPEAL from the Chancery Court of Dale.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 21st of February, 1890, by Mrs. Lancy J. Parker against H. Z. Parker, who was the father of Stephen D. Parker, complainant's deceased husband, and also the administrator *de bonis non* of his estate ; and sought a settlement of his administration, and also of the accounts of a partnership which had existed between him and said S. D. Parker, under the firm name of H. Z. Parker & Son. The facts of the case were thus stated by HARALSON, J.:

"The bill alleged that complainant had been twice mar-

ried, the first time to Stephen D. Parker, who died intestate, in July, 1886, leaving four minor children, whose names and ages are given, the youngest being eight years old, and the oldest, fourteen, and the last time to W. F. Parker, the present husband; that her first husband, Stephen D. Parker, at the time of his death, and for a number of years before, was a partner with his father, the defendant, who conducted a mercantile business in the town of Ozark, in said county of Dale, under the firm name of H. Z. Parker & Son, and that they did a large and successful business; that upon the death of her said husband, on her application, she was appointed by the Probate Court of said county, and became the administratrix of the estate of her said deceased husband, but that the defendant was her trusted adviser, and attended to all the business for her, about which she knew but little, and was administratrix really, only in name. She further represents, that when she married the second time, she did so in opposition to the advice and wishes of her own and her husband's family, and they advised her to resign the administration of her former husband's estate; that accordingly she filed her statement for a settlement, prepared for her by the defendant, and resigned the administration; that she consented, and the defendant became the administrator *de bonis non* of said estate, and the guardian of her minor children, and since then she knows nothing about the business of the estate; that in December, 1889, the defendant made a partial settlement of his administration, which purported to show all the assets of the estate, but it was a very unsatisfactory statement to complainant. She avers, that defendant is an old man, and is incapable of managing the affairs of the estate; that he seems to take no interest in the business; that he has an extensive business of his own, which he neglects, and knows and cares nothing for the distributees of the estate of her husband; that its management is intrusted to strangers; that he has failed to account for the property on the inventory and appraisement; that as surviving partner of H. Z. Parker & Son, he has failed to settle the copartnership business, which is so connected with the estate as that the aid of a court of chancery is necessary to finally settle the administration of said estate.

"The prayer of the bill is, 'that the said H. Z. Parker, administrator, be made a party respondent to this bill of complaint; that he be required to come into this honorable court and settle the affairs of said estate; . . . . . . . . that he be required to state an account between himself and the decedent, as partners, and, also, that he be required to

state his account as administrator of said estate; . . and upon a final hearing, the settlement being completed, oratrix prays that said Parker be removed as administrator and guardian as aforesaid, and that oratrix or some other person, who, to your Honor may seem capable and trustworthy, and to have the interest of the distributees at heart, be appointed in his stead; and for all such other and further, general and special relief, as the facts in the premises may warrant.'

"Process was prayed against the said H. Z. Parker as administrator, alone, and as such he is the only defendant to the bill. The minor children and heirs of said Stephen D. Parker are not parties, either as complainants or defendants. No process was prayed against them, none was ever issued and served, so far as appears, and no guardian *ad litem* appointed for them. And yet, there appears in the record what purports to be an answer to the bill, filed by J. D. Bailey, 'guardian *ad litem* for the above named heirs.' He never appeared in the court again, so far as appears, either in person or by attorney, except to file a. written motion in behalf of the minors, as their guardian *ad litem*, to have a credit claimed by the complainant, for a $500 investment in railroad stock, disallowed.

"The defendant answered the bill, admitting the copartnership, giving the terms of it,—contrary to the allegations of the bill,—which the evidence afterwards showed to be correct; admitting the allegations of the bill as to the administrations of said estate, of his connection with the business of the estate and copartnership, but denying that he had neglected either, or that either had been mismanaged; that he proceeded promptly to wind up the affairs of the copartnership, and to collect its assets, and to that end, the goods and assets of the firm on hand, at the death of his son, were inventoried and appraised at their value; and under the orders of the court, the goods were sold, and he purchased them, at their appraised value, and he was ready and willing to settle in the court under the bill, as surviving partner and administrator. For purposes unnecessary to state, other allegations were made, and the answer was prayed to be taken as a cross-bill. The complainant answered it as such.

"It appeared in evidence that the partnership owned several parcels of real estate, and among them the store-house and lot on which they did business in the town of Ozark. The evidence tends to show, that J. W. Brooks conveyed that property to H. Z. Parker & Son by deed, on the 11th Dec., 1878; and it is stated that the complainant introduced the

16

deed in evidence, but it nowhere appears in the record. It also further appears that, after the death of Stephen D. Parker, the defendant procured the complainant, in consideration of $250, to execute a deed to him of her husband's interest in the lot, but for what purpose, or on what authority, is not shown; and it is stated that complainant offered that deed, also, in evidence, but it is not to be found in the transcript. The proof tends further to show that H. Z. Parker paid $500 for the firm, out of his own means, for this property, and that the deceased partner never paid any part of it. After the death of the deceased, it is shown, without conflict, that H. Z. Parker erected on the lot belonging to the firm a brick building, used for a hotel above, with two stores beneath, at a cost of $7,500, which was paid out of his own means; and for this sum, he seeks to be reimbursed out of the partnership assets, if the property is not adjudged to be his. Much evidence was taken on both sides, and the transcript is voluminous.

"The chancellor, on final hearing on pleadings and proof, rendered four decrees, which are assigned, separately, as being erroneous. The first was a decree taking jurisdiction of the settlement of the estate of said intestate, Stephen D. Parker, and ordering a reference to the register, requiring him to state an account on final settlement of the partnership of H. Z. Parker & Son with H. Z. Parker as surviving partner, and requiring said Parker to file with the register, within 30 days, his account and statement for such final settlement, with instructions appropriate for the proper statement of such account. It was further ordered that, "as soon as the report of the register hereinbefore ordered in regard to the partnership of H. Z. Parker & Son shall be filed and confirmed, that said H. Z. Parker, as administrator of the estate of S. D. Parker, deceased, is hereby required to file with the register of this court his account and vouchers for a final settlement of the same," and that the register proceed thereupon, to audit and state said account on final settlement of said estate. The other decrees were those which passed upon the reports of the register, and the final decree settling the partnership accounts between the defendant and the estate of his deceased partner, and of final settlement and distribution of the estate of said Stephen D. Parker."

W. D. ROBERTS, and M. SOLLIE, for appellant.

BORDERS & CARMICHAEL, contra.

[Parker v. Parker.]

HARALSON, J.—The assignments of error are so general, and the transcript so voluminous, that one would hardly ascertain in what the alleged errors consisted, except for the fact, that the appellant's counsel have called attention to them in the brief they have filed.

The fact seems to have been overlooked by the court and counsel on both sides, that the infant distributees of the intestate, whose estate the bill in this case was filed to settle, have not, as complainants or defendants, been made parties to the suit. The complainant filed the bill, as one would suppose, more especially in the interest of her children, as, together, they were more largely interested than she. They owned four-fifths of the assets of the estate of their deceased father, when finally settled; and the lands of the intestate,— the estate being solvent,—descended to them, subject only to the widow's dower, if she was entitled to any. On the death of the deceased partner, the firm of which he was a member was *eo instanti* dissolved, and one of the consequences of the dissolution by death was (subject to well defined limitations) that the distributees, as to the personal assets, became joint owners, and the heirs, as to the realty, became tenants in common with the surviving partner.—Story on Part., § 346. The title to the personal assets, in a case of the kind, devolves on the survivor, to be used for the purpose of paying the debts of the partnership, and thereafter, for distribution among the representatives of the deceased; but the title to the real property of the firm devolves on the heirs of the deceased member, subject in equity to be converted into partnership effects and used for certain partnership purposes. In any suit, therefore, touching the interest of a deceased partner in the lands of the partnership, his heirs are necessary parties.—*Abernathy v. Moses*, 73 Ala. 381. And it may be stated as a general rule, that in a bill for final settlement of the estate of a deceased intestate, all the next of kin are necessary parties, so that, as Story expresses it, "the rights and claims of all may be conveniently established at the same time, and in the same suit."—Story's Eq. Pl., §§ 89, 205, 207; *Teague v. Corbitt*, 57 Ala. 537. And when a suit in equity cannot be disposed of properly on its merits, for the want of necessary parties, objection may be taken on error, and, in the absence of objection, by the court, *ex mero motu.*—*Lawson v. Ala. Warehouse Co.*, 73 Ala. 294; *Boyle v. Williams*, 72 Ala. 353; *Prout v. Hoge*, 57 Ala. 29.

As the case must be reversed, because the infant children of the deceased intestate, who were his only next of kin and heirs at law, were not made parties, it may be well, for the

[Parker v. Parker.]

purposes of another trial, to refer to some of the alleged errors in the final decree.

On the ground, that the interests of the complainant and infants in the litigation were supposed to be in substantial accord,—without reference to the fact, whether they were employed by the guardian *ad litem* of the infants, or represented them by other authority,—the chancellor allowed the solicitors *of the complainant* $200 as a fee for their representation of said minors in this suit.    He also allowed $100 to the *defendant's solicitor* for his services as guardian of said minors, and to the guardian *ad litem* he allowed a fee of $20. These allowances were not proper. The infants were not parties, to be represented by anybody.   And if they had been, their interests were opposed throughout to those of the defendant, and, in one aspect of the case, to those of the complainant.   The guardian *ad litem* of minor defendants, in any cause, is their responsible representative ; and no one can properly represent an infant, as guardian *ad litem*, or as his attorney, who has an engagement to represent an adverse interest, however slight.

It is said the defendant was improperly charged with $232 "on the Deshazo mortgage."   On his statement of the receipts of the partnership, we find that he charges himself with this amount, as collected from W. L. Deshazo.   Defendant sought to show that this was a mistake, and he ought not to have charged himself with that item.   The only evidence we have on the subject is that of L. W. Kolb, taken before the register, and it is rather indefinite, too much so to be well understood.   It was as follows:   "W. L. Deshazo borrowed $200, and interest, $32, from Mrs. L. J. Parker (the complainant).   Mr. H. Z. Parker bought the mortgaged property, paying the difference between the mortgage and the value of the property, and gave Mrs. Parker credit for $232, on her account at the store of H. Z. Parker, which included both her account as administrator and individual." If Mrs. Parker lent Deshazo her own money, and took a mortgage to secure it, and the estate of S. D. Parker had no connection with the loan, and H. Z. Parker purchased the mortgage from her, and paid her, by giving her credit at his own store, and it was inadvertently charged, as an item of receipt by him of money for the partnership of H. Z. Parker & Son, the mistake ought to be corrected.   It would be wrong in such case to charge him with it.

It appears from the evidence, that the defendant advanced to complainant, since his administration, for herself and children, for support and maintenance, the sum of $954.33.

[Parker v. Parker.]

The court required it to be ascertained how much of this sum was expended for the benefit of each distributee, and the amounts to be charged to them, respectively, in distribution. On a legal settlement, this would have been proper, if it was ascertained these sums were necessary to be advanced.

The evidence tends to show, though it is presented in an imperfect and very unsatisfactory form, that the store-house and lot in Ozark was purchased for, and conveyed by the seller to the firm of H. Z. Parker & Son; but it does appear that the purchase-money was all advanced by H. Z. Parker, and none of it by the deceased partner. Defendant charged the amount of the purchase-money, with interest, to the firm, as so much money paid by him on account of the purchase of the property, and to this credit he was entitled. For some unexplained reason, he procured a deed from the complainant, purporting, as the evidence tends to show, to convey the interest of her deceased husband in said lot to him. After the dissolution of the partnership, by the death of his co-partner, the defendant erected a brick building on said lot, the upper part of which is used as a hotel, and the lower, for two store-rooms, which he paid for out of his own means, and which cost him, as is agreed $7,500; and this sum he seeks to have credited to himself, on the partnership settlement. The chancellor refused, on final decree, to pass upon the interest of the heirs in the property, holding that the question was not properly before the court; but did charge the defendant with the increased rents of the property, growing out of the improvements put on the lot by the defendant.

There is every reason to have this question settled in this suit. With all the parties in interest before the court, it is better to have it done, than to force them to resort to another bill for the purpose.—*McMaken v. McMaken*, 18 Ala. 578; Sto. Eq. Pl., § 72. It does not require partition to be made, as was supposed, before the interest of the survivor and of the heirs of the deceased partner in this property may be adjudicated. Without passing on the question now, we may refer to what the authorities seem to hold.

Mr. Freeman, in his work on cotenancy and partition says, "Neither cotenant has any power to compel the other to unite with him in erecting buildings, or making any other improvements upon the common property. If either chooses to make such improvements, he can not recover from the others their share of the expense incurred thereby, in the absence of an express agreement on their part, or such a

[Lee v. King.]

course of dealing as to convince the court that a mutual understanding existed between them to that effect."—Freeman on Cotenancy & Partition, § 262; *Dech's Appeal,* 57 Pa. St., 472; *Ford v. Knapp,* 31 Hun, 522; *Bazemore v. Davis,* 55 Ga. 504; *Elrod v. Keller,* 89 Ind. 382; *Becnel v. Becnel,* 23 La. An. 502. And on this subject, see our own adjudications. *Ferris v. Montgomery Land Co.,* 94 Ala. 557, and authorities there cited. And as to whether or not the cotenant making such improvements may be charged with the increase of the productive value of the property resulting from his improvements, see Freeman on Cotenancy & Partition, § 262; *Nelson v. Clay,* 7 J. J. Marsh. 138; s. c., 23 Am. Dec. 387.

We have made the foregoing suggestions, on the record as it now appears. When new parties are made, new facts and questions may arise, variant from those now presented.

Reversed and remanded.