No. 12,651.

GUSTAVE A. BREAUX VS. BERTHA A. LE BLANC, WIFE, JOSEPH A. WEBER, HUSBAND.

Our Code declares that a partnership may be dissolved for the breach of one of its obligations.

It declares that it may be dissolved for just cause without furnishing any interpretation of that term. Hence it is a question for the courts to determine.

Partnership is essentially a relation of mutual trust and confidence, and when they cease the engagement is virtually at an end.

One of the members of an ordinary planting partnership having failed or refused to comply with the terms of his engagement to furnish his proportionate share of the funds necessary to carry the planting operations to completion, violates one of the essential obligations of the contract and gives to the other partner just ground for annulling it.

APPEAL from the Seventeenth Judicial District Court for the Parish of Lafayette. *De Baillon, J.*

*Gus. A. Breaux*, Plaintiff and Appellant, *in propria persona* (*William Campbell, R. W. Elliott* and *Fenner, Henderson & Fenner*, of Counsel).

*Charles D. Caffery, Joseph A. Chargois* and *W. S. Parkerson* for Defendants and Appellees.

Argued and submitted December 15, 1897.
Opinion handed down January 10, 1898.
Rehearing refused March 7, 1898.

The opinion of the court was delivered by

WATKINS, J. The plaintiff seeks the annulment and dissolution of a planting partnership which he alleges he entered into in February, 1896, with the defendant Weber, under the terms, stipulations and conditions of an act of partnership which was signed by the parties in duplicate, and to which special reference is made—his averment being that said husband was the real partner, although, for personal reasons of his own, the name of his wife was employed and used, and he acted as her ostensible agent.

The contract of partnership declares that it was made and entered into on the 8th of February, 1896, between Mrs. Bertha A. Leblanc, wife of Joseph A. Weber, represented therein by her said husband under a letter of attorney, and Gustave A. Breaux, as the owner of the Oakburn plantation, situated in the parish of Lafayette, for the purpose of operating and cultivating same in sugar cane; and that same was to continue in force for a term or period of three years from the date thereof.

Said act of partnership stipulated amongst other things that said partners should cultivate and harvest crops of sugar cane, and such other crops as are usual and suitable; and that, for said purposes, the owner, Breaux, obliged himself to furnish the plantation with all such houses as then stood thereupon, " including corn-cribs, mule stables, cabins, etc., *reserving to himself* the dwelling house, private stables and buildings in the yard, and lots adjoining said dwelling and yard, pasture for all animals to be used for the benefit of the place, and the stock of each (partner), except such lots as hereinbefore reserved. All repairs to buildings and fences to be made at the common expense."

It further stipulates that the mules, farming utensils, carts, harness, etc., were to be inventoried and appraised, and that the planting partnership should take them at the appraisement—Breaux to receive " credit for same as well as for mules sold."

It further provides that all mules, farming implements, carts, harness, etc., and " whatever else is bought for the place, as well as for provisions purchased for the store to furnish hands, shall be purchased by the firm."

It further stipulated that Joseph A. Weber should give " his undivided time and attention to the management and cultivation of the place without compensation other than such as shall be received from a division of the proceeds of the crops hereinbefore provided."

That " the funds necessary to cultivate the said plantation shall be procured by the firm in amount not to exceed three hundred and sixty dollars per month, until the crop is laid by, and thereafter in such amount as shall be agreed upon."

And it contains the further express stipulation that " no debt of any kind shall be contracted without the consent of both partners previously obtained."

It further provides that " all building material for buildings erected (on the plantation) are to be paid for by said Breaux; and that no building material shall be bought without his consent— expenses of buildings to be at the expense of the copartnership."

The contract stipulated that J. A. Weber was to be the general overseer and manager of the firm—reserving the right of consultation to the said Breaux as to any general disposition of the place.

It provided, that Weber was " to ditch, drain and cultivate the plantation as he judges best to enable him to make profitable crops— the firm to feed two horses for Mr. Weber, which were to be used for plantation purposes."

Finally it specified that " all cane crops shall be sold to the best advantage and for the most money obtainable and after proper expenses and liabilities of the firm are paid the proceeds shall be equally divided between the partners." ·

The foregoing are the essential stipulations of the contract of partnership which was signed by Gus. A. Breaux and Bertha A. Weber *per* J. A. Weber; and it was thereafter duly filed for record, and recorded according to law.

The grounds of nullity assigned in the plaintiff's petition are substantially as follows, viz.:

1. That notwithstanding an appraisement was made of all the agricultural implements, carts, mules, etc., and said property was nominally transferred to the partnership, neither Weber nor his wife have ever paid a single cent therefor.

2. That agricultural implements and mules were purchased for the plantation account, the plaintiff paying his share; while the defendant failed to pay his share, but on the contrary charged plaintiff's personal account in one instance, and declined making payment in another.

3. That there are some debts due by the firm which have not been paid, because the defendant avers his inability to pay his share, though plaintiff is ready and willing to discharge his proportionate share thereof.

4. That in violation of his contract, and disregard of the rules of prudence, and without just cause, he delayed the commencement of the delivery of the sugar cane for a period of three weeks, thus carelessly and heedlessly endangering the entire crop—notwithstanding plaintiff's protest, and in disregard of his duty as manager of the plantation for the partnership.

5. That by the defendant's gross mismanagement the cost of the harvesting of the crop was increased fully forty per cent.

6. That in January, 1897, notwithstanding the most propitious weather, defendant ordered all plantation work to be discontinued, when he should have been using every exertion to plant cane for the crop of that year; and that in consequence of that action no portion of the crop has been planted. That, during that period of delay the defendant was daily absent from the place, to the utter neglect of the duties of his employment.

7. That in January, 1897, the defendent complained of the manner in which funds for raising the crop were being handled, and demanded that same should be placed in his hands for disposal; and he declared that he would not proceed any further with the partnership unless his demand was complied with—notwithstanding plaintiff's refusal so to do on the ground that the contract of partnership does not thus provide. That thereupon the plaintiff distinctly refused to furnish any more than his proportionate share thereof and demanded of the defendant that he should furnish his

share thereof, and that he must be prepared to pay his share of the January pay rolls, according to the rules governing the plantation.

And also demanded that the defendant should be ready to pay his share of the debts contracted in 1896; and that he defaulted in meeting both of said demands.

Then follows this general averment, viz.:

"Now petitioner avers that, during the whole of the year 1896, and up to this time, the said Weber has persistently manifested a disposition to, and has violated the contract of partnership to his detriment; and that his conduct shows that he has persistently acted so as to render the continuation of (the) partnership impossible except on his own terms, and with a disregard of all other rights"—specifying various details of his exercise of undue and overbearing authority.

Petitioner then specifies that "utterly forgetting the relations that should exist between partners, the defendant at great pains and with evident satisfaction," publicly and to many persons spoke in terms of detraction of him, styling him a bankrupt and wholly incompetent for the transaction of business.

He avers that he is the sole owner of said plantation and all the property which is included in the contract of partnership, and that it is his home and the place of residence of his family. And he avers that, for the various reasons assigned, he is entitled to have the partnership dissolved and to retake the possession and control of said plantation and property.

It is upon these allegations the plaintiff asks a judgment dissolving and annulling the contract of partnership; and to prevent irreparable injury he obtained a writ of injunction.

The defendant denies all the plaintiff charges, and avers that he has at all times and in every respect been ready and able to peaceably carry out all the provisions of the contract of partnership.

He specially denies that he ever violated any part of the contract; and avers his willingness and ability to meet his share of the pay rolls.

On the trial there was judgment rejecting the plaintiff's demands and dissolving his injunction, and from that decree the plaintiff has appealed.

In his reasons for judgment the judge *a quo* makes this statement substantially, viz.:

That during the year 1896 the *plaintiff* succeeded in effecting a loan of six thousand dollars with which to run the plantation during that year, and granted a lien on the crop to secure the payment—the crop yielding some five thousand dollars in net proceeds. That in the early part of the year 1897, the partners being unable to make arrangements to obtain money to enable the firm to operate the plantation for the year 1897, they each for himself sought to raise his share of the funds; and that just here arose the trouble between them.

The judge disposes of this entire matter in a few words, viz.:

" It must be borne in mind that six thousand dollars was borrowed on the crop of 1896. That Weber swears that he did not handle any of the money. That the amount of expenses to make out and handle the crop had not been shown; and the proceeds of the crop were shown to amount to about five thousand dollars—and no accounting or settlement had been made of the result of the first year's experience. The evidence fails to show what was the result of the venture for the first year. It was shown, and not contradicted, that Weber did not receive the proceeds of the crop of 1896.

" Under these circumstances, friction was unavoidable, for the contract required an equal distribution of the proceeds after payment of debts. *And so matters dragged on through January, 1897, when work was stopped, as stated above,*" etc.

The judge does not say so, but the foregoing statement implies that the defendant was absolved from fault or blame, because plaintiff had not rendered him an account of the proceeds of the crop of 1896.

In so deciding he has evidently overlooked two very important facts: (1) that the articles of partnership bound the partners to furnish each his proportionate share of the funds necessary to operate the plantation during each year; (2) that the partners proved unsuccessful in obtaining the needed funds and the *plaintiff* procured, on his own individual responsibility, the sum of six thousand dollars and granted a lien on the crop to secure its payment. That the total proceeds of the crop amounted to only five thousand dollars —one thousand dollars less than the loan to the *plaintiff*—and yet because the plaintiff did not turn over same to his impecunious partner, Weber, and thus expose himself to the loss of the entire sum, it is suggested that " friction was unavoidable."

The judge in his reasons admits that "the contract required an equal distribution of the proceeds *after the payment of debts,*" and not before.

Had the defendant furnished his share of the six thousand dollars, instead of the plaintiff borrowing the *whole* upon his own account, there would have been some propriety in his claim for an accounting.

But the judge concedes that the proceeds of the crop of 1896 amounted to one thousand dollars less than the plaintiff had borrowed, and hence the defendant was without interest in them, or any right to an account—except as a bare technicality.

In the paragraph of the reasons for judgment, which immediately precedes the one just quoted, the judge observes that "the non-payment of debts does not give the right to one partner to have the partnership dissolved;" but that is not the full claim which the plaintiff makes. It is that, notwithstanding the contract of partnership obliged the defendant to support one-half of the expenses of the cultivation of the crops, and to furnish one-half of the money necessary for that purpose, he had totally failed to furnish *any part* of the funds and expenses to make and harvest the crop of 1896, and had failed and refused to reimburse the plaintiff his portion of that indebtedness beyond the value of the crop.

That having the experience of 1896 before him, the plaintiff insisted that the defendant should furnish his *quota* of the funds necessary to liquidate the pay roll for the month of January, 1897; and also to pay his proportionate share of the current indebtedness of the partnership. But the defendant either failed or refused to comply with his demands.

The crop venture of 1896 proving to have been a loss instead of a profit, the defendant had no means, and it seems quite likely that he had no credit.

Under this state of facts what course was open to the plaintiff but the one he pursued, institution of a suit for the dissolution of the partnership? None. The judge in his reasons for judgment states that "the parties being unable to make necessary arrangements to obtain the money for the firm for 1897, they sought each for himself to obtain his share for the necesssary expenses."

But the plaintiff procured his share and the defendant failed altogether.

Again: "And so the matter dragged on through January, 1897, when work was stopped," etc.

It was under these circumstances that this suit was filed and injunction granted on February 7, 1897, immediately after the events just recited had transpired.

This was not a mere matter of disagreement which a little forbearance would have reconciled, or a slight difference of opinion which a delicate remonstrance would have cured.

It was very much more serious than that.

The facts developed during the planting operations of the year 1896 had demonstrated the defendant's total inability to supply his proportionate share of the funds to defray the plantation expenses; and that he was utterly without credit.

The plaintiff had risked in the enterprise his sugar plantation, and its outfit of carts, mules and farming implements; and circumstanced as the defendant was, the plaintiff was called upon to risk, also, the *whole* of the plantation expenses, for the year 1897, and then pay the defendant one-half of the profits, if any.

In our opinion the reasons assigned by the judge, when taken in the light of the surrounding circumstances, do not justify his judgment.

In addition to the foregoing, there are several other grounds equally as fatal to the contract as the one just examined and analyzed.

One of these is, that this plantation is the home of the plaintiff and the residence of his family, and that the defendant's systematic course of conduct toward the plaintiff and about his house was a constant source of irritation and annoyance, whereas it should have been his constant endeavor to bring about pleasant and harmonious relations between them.

Besides this, the defendant mistreated one of the plaintiff's personal servants; and more than once invaded the private grounds that the plaintiff had reserved to himself, and was guilty of trespassing thereon.

It would serve no useful purpose to go over any more of the details of the troubles of the partners.

Our Code declares that a partnership may be dissolved for the breach of any of the obligations thereof. R. C. C. 2888; Bruce vs. Ross, 18 La. 341.

It declares that a partnership may be dissolved for "just cause," without furnishing any interpretation of that term; hence it is a question for the court to determine for itself in any given case.

Partnership is essentially a relation of mutual trust and confidence and when they cease, the contract in effect is dissolved. Harrison vs. Tennant, 21 Beav. 482.

It is clear to our minds that the defendant is without right or interest to have the contract of partnership kept in force; on the contrary, we think equity and justice require its dissolution.

And it is so ordered.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the contract of partnership heretofore subsisting between the plaintiff and the defendant be dissolved and annulled, and the plaintiff restored to the possession of his plantation and property; and that his injunction be reinstated and perpetuated, and that all costs of both courts be taxed against the defendant—fully reserving the right of each one of the partners to an accounting and final set-tlement of the partnership affairs and accounts.