LEDBETTER *v.* FARRAR LUMBER COMPANY.

No. 9452.   October 13, 1933.

*Wright & Covington,* for plaintiff in error.

*Maddox, Matthews & Owens, E. S. Taylor,* and *J. A. McFarland,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) The question which may properly be first considered is whether these fi. fas. are invalid and unenforceable. This is the more apparent, since from the nature of the case made by the petition it is clear that if the fi. fas. are void, the levy which was proceeding should be permanently enjoined. So far as appears from the record, the fi. fas. were not issued against any specific property as the property of Ledbetter Brothers, but were issued to enforce the collection of taxes from Ledbetter Brothers upon all their taxable property, whether real or personal, and would cover either or both kinds of property. The petition alleged that a partnership doing business under the name and style of Farrar Lumber Company sold certain real estate on which a hotel building was located to John W. Ledbetter and W. T. Ledbetter, a partnership operating as Ledbetter Brothers. Farrar Lumber Company executed to Ledbetter Brothers a bond for title, conditioned on payment of $19,-000, the balance of purchase-price. Thereafter John W. Ledbetter died, and A. W. Ledbetter was appointed administrator of his estate. Later the surviving partner, W. T. Ledbetter, and A. W. Ledbetter as administrator of the estate of John W. Ledbetter gave Farrar Lumber Company a bill of sale, in the purported name of Ledbetter Brothers, to certain personal property specifically described, which is practically the same property levied on under the tax executions issued against the former partnership of Ledbetter Brothers. The bill of sale was dated December 14, 1928. On January 10, 1930, W. T. Ledbetter as surviving partner of Ledbetter Brothers, and the heirs of John W. Ledbetter, or their legal representatives, and in settlement of the debt of Ledbetter Brothers, conveyed the real estate referred to in the bond for title, and delivered possession of the personal property conveyed by the bill of sale, to Farrar Lumber Company, and "in said settlement possession of the personal property now levied upon was so surrendered to said Farrar Lumber Company, a partnership as aforesaid, free from any claim whatsoever on the part

of any of the parties." The petition alleged that the fi. fas. for 1928 and 1929 were void, and one of the prayers of the petition was that they be decreed to be void and canceled accordingly. It is clear that two questions were presented by the demurrer of A. W. Ledbetter: (1) whether the fi. fas. involved in this case are void, and (2) whether the Farrar Lumber Company was relieved from their liability for the lien of the taxes upon the personal property delivered into their possession, by the stipulation that this personal property was surrendered to the Farrar Lumber Company "free from any claim whatsoever on the part of any of the parties" (referring to the heirs of John W. Ledbetter, and W. T. Ledbetter).

The defendant demurred specifically to the allegation that the tax executions were void because of the death of John W. Ledbetter, as a conclusion not supported by law. We are of the opinion that the fi. fas. in question were not void, but that the assessments were properly made and the fi. fas. lawfully issued. A partnership is dissolved by the death of one of its members (Civil Code of 1910, § 3162), but the surviving partner continues the business in order to liquidate and conclude the partnership. Indeed, "the surviving partner, in case of death, has the right to control the assets of the firm to the exclusion of the legal representatives of a deceased partner, and he is primarily liable to the creditors of the firm for their debts." § 3176. See *Cook* v. *Cochran*, 42 *Ga. App.* 478 (156 S. E. 465), and cit. In his capacity as surviving partner he is liable for the burden of taxes imposed by the State upon the partnership property within his possession and control until the partnership has become extinct. As long as any liabilities exist (and certainly the lien for taxes upon the partnership property in his possession and control is a debt for which the surviving partner is liable) this property is still partnership property. In equity, even the real estate of a firm must be considered as personal property to the extent necessary to pay debts. § 3178. The petition discloses, without question, that there were debts of the partnership to be paid at the time these taxes were assessed and the fi. fas. issued. The general rule is that the death of a partner eo instanti dissolves the firm of which he is a member, whether the partnership is one at will or for a fixed date. Parker *v.* Parker, 99 Ala. 239 (13 So. 520, 42 Am. St. R. 48) ; Breaux *v.* LeBlanc, 50

La. Ann. 228 (23 So. 281, 69 Am. St. R. 403, note). It is safe to hold that under the law of Georgia the "dissolution" of a partnership caused by the death of a partner, as the term is used, is not absolute until the partnership becomes extinct by a complete winding up of all its affairs by the surviving partner or partners; for the partnership still continues until all the debts of the partnership for its past obligations, or for those necessarily assumed in the winding up of the partnership, are extinguished. The State was entitled to receive its taxes for the years 1928 and 1929 on the personal property still in existence, and it was the duty of the surviving partner to pay the taxes. The fact that the fi. fas. were issued against the partnership is immaterial, for the property which was taxable was partnership property until the winding up of the partnership affairs had been completely concluded. The rule we have just stated is followed in 2 Rowley on Partnership, 1308, § 942, as follows: "It has been held that after death of a partner, if the business is continued by the surviving partner, it is properly listed for taxation in the firm name," citing Blodgett v. Muskegon, 60 Mich. 580 (27 N. W. 686). The pertinent code sections applicable to the return and assessment of property for taxation lend force to the proposition announced. The State is not concerned as to the rights of the parties inter se as to the ownership or possession of property. Civil Code (1910), §§ 1010-1087 inclusive. It was said in *Hight* v. *Fleming,* 74 *Ga.* 592: "Although, on a money rule, a tax fi. fa., claiming to share in the distribution, was issued against a person other than the defendant from whose property the fund in court was raised, yet where it appeared that the person against whom the tax fi. fa. was issued was the agent of the person from whose property the fund was raised, and that the fi. fa. issued for the taxes of the identical property sold to raise the fund, the fi. fa. was properly ordered to be paid." In *State* v. *Hancock,* 79 *Ga.* 799 (5 S. E. 248), this court held: "Where a man resided for many years with his family upon certain land, the title to which was in his wife and daughters, and he returned it and paid taxes on it in his own name, and where during four years he so returned the property along with certain personal property, but failed to pay the taxes, and executions issued therefor, together with his poll-tax, and to a levy thereof upon the land the wife and daughters interposed a claim, it was not incumbent upon the State or county to have investigated the

legal title to the property, or to show, on the trial of the claim case, the proportion of taxes due on the . . personal property and poll; but it was the duty of the claimants to have made this appear to the court, and to have paid or offered to pay their proper proportion of the taxes, before they could ask a finding that the property was not subject. In the absence of this, such a finding was error." See also *National Bank* v. *Danforth,* 80 *Ga.* 55, 65 (7 S. E. 546) ; *Herrington* v. *Ashford,* 157 *Ga.* 810 (122 S. E. 197), and cit. In *Wiley* v. *Martin,* 163 *Ga.* 381, 384-385 (136 S. E. 151), this court said: "As a general rule, no property can be sold under a tax execution in personam as the property of the defendant therein, when the defendant neither has title nor possession nor any right to represent the person who has it. *Clewis* v. *Hartman,* 71 *Ga.* 810; *Burns* v. *Lewis,* 86 *Ga.* 591 (13 S. E. 123) ; *McLeod* v. *Brooks Lumber Co.,* 98 *Ga.* 253 (26 S. E. 745). But to this general rule there is an exception. If the true owner of property fails to return the same for taxation, and the same is returned by another, the State and county are entitled to the taxes thereon; and if the taxes are not paid by the person who returns the property for taxation, nor by the legal owner thereof, the tax-collector, finding the property on the tax-receiver's digest, has the right, and it is his duty, to issue an execution against the person who returned the same, have the same levied, and the property sold to pay the taxes due thereon. All property in this State, unless expressly exempted by the laws thereof, or by the laws of the United States, is subject to taxation, and must pay its pro rata part of the tax for the support of the government, in whosesoever hands it may be, or whoever may return the same for taxation. It is not incumbent upon the State and county to investigate the legal title to property before assessing the same. The only duty of the tax-receiver of the State and county in regard to this matter is to see that all property, not exempted as above set out, is returned by some one. If it is not returned by the legal owners, but is returned by another, the State and county are entitled to taxes thereon; and if the taxes are not paid by the person who returns the property for taxation, nor by the true owner thereof, the tax-collector, finding the return of the property on the receiver's digest, has the right, indeed it is his duty, to issue execution against the person who returned the same and have it levied thereon. *State* v. *Hancock,* 79 *Ga.* 799 (5 S. E. 248) ; *Barnes* v. *Lewis,* 98 *Ga.*

558 (25 S. E. 589); *Dawson* v. *Dawson,* 106 *Ga.* 45 (32 S. E. 29). And the purchaser at such sale, if the sale is otherwise unobjectionable and free from fraud, will acquire good title to the land as against the true owner thereof." So we are of the opinion that the court erred in overruling the demurrer.

The contention that in the negotiations of settlement the Ledbetters delivered the property "free from any claim whatsoever on the part of any of the parties," and that this imported a warranty of title to the property, is without any merit. As the paying of taxes is a duty and a liability, it can not be said to be a claim to any beneficial interest in the property, and the assurance, even if made by the Ledbetters, that the property would be free from any claim whatsoever on the part of any of the parties, is obviously nothing more than a quitclaim or a disclaimer of title on the part of the parties making the statement. For the reasons stated, the court erred in not sustaining the demurrers and in not dismissing the petition. From this it follows that the further proceedings in the trial now under review were nugatory and present nothing for present consideration of this court.

*Judgment reversed. All the Justices concur.*
BECK, P. J., concurs in the result.