LONG *v.* LANDMAN.

1. ESTATES OF DECEDENTS—MORTGAGE BY EXECUTOR—PROBATE
   COURTS—JURISDICTION—COLLATERAL ATTACK.

   The necessity for an executor's giving a mortgage upon decedent's property to pay a debt against the estate is not open to inquiry upon a bill to foreclose the mortgage, where the execution of the same was authorized by the probate court upon a petition containing allegations sufficient to confer jurisdiction upon it.

2. SAME—DEBT ACCRUING AFTER DECEDENT'S DEATH.

   Under 3 How. Stat. § 6105, providing that the probate court may authorize the giving of a mortgage for the "purpose of paying the debts against the estate of any deceased person," such court may authorize a mortgage for the payment of debts and charges accruing after decedent's death.

3. SAME—TAXES—DUTY OF EXECUTOR.

   It is the duty of an executor to pay the taxes upon real estate of the decedent in his possession pending the settlement of the estate; and, where the available funds of the estate are insufficient for the purpose, he may obtain from the probate court the authority to raise the amount by mortgage upon the land.

4. SAME—FORECLOSURE OF MORTGAGE—OBJECTIONS.

   An objection that the amount for which a mortgage was given by an executor, under authority of the probate court, for the payment of debts against the estate, includes improper items, does not go to the validity of the mortgage, and hence will not be considered on foreclosure, but will be left for adjustment in the probate court upon the executor's accounting for the moneys received on the mortgage.

Appeal from Kent; Adsit, J.   Submitted June 7, 1898.
Decided September 20, 1898.

Bill by Kate E. Long against William J. Landman, administrator with the will annexed of the estate of Mary C. Hurlbut, deceased, George H. Long, executor of the last will and testament of Arthur B. Long, deceased, and

others, to foreclose two real-estate mortgages. From a decree for complainant, defendants, except George H. Long, appeal. Affirmed.

*Crane, Norris & Stevens*, for complainant.

*Butterfield & Keeney*, for appellants.

MOORE, J. This is a proceeding to foreclose two mortgages. A decree was rendered in the court below in favor of complainant, from which decree some of the defendants appeal.

Prior to 1878, Arthur B. Long, of the State of Pennsylvania, and his son, George H. Long, had been engaged in the business of lumbering. In April, 1878, a partnership agreement was made, which, omitting the formal part, reads as follows:

"As this agreement has reference now to the late firm of A. B. Long & Son, who has formerly been doing business as the firm of A. B. Long & Son, and is now carrying on and doing business of lumbering in the name of A. B. Long & Son at this date, and for some time has been doing and carrying on the business in this name, and ₰hat all lands and lumber, logs and other property, have been made to George H. Long and A. B. Long, for which property in logs, lands, and lumber, and sundry personal property has been made, by deed and otherwise, unto the late firm of A. B. Long & Son, A. B. Long and George H. Long, who in their own right and by deed own the property so sold and deeds held for the same as follows: That A. B. Long owns in said property and lands the undivided two-thirds of all lands and other property now held and owned by the firm of A. B. Long & Son, and that George H. Long now holds and owns the undivided one-third interest in all the above lands and other property; and now, for the purpose of continuing and carrying on the business of lumbering, we this day agree to continue the business in all its various branches and places as they shall from time to time think most proper and best for them to do, and the length of time shall be determined by the parties themselves, and to their best interest; and it is further agreed by and between the parties that A. B. Long shall not draw or take from the firm more than $500

monthly, and that George H. Long shall not draw or take from the firm more than $250 monthly, and that A. B. Long is to have two-thirds interest and profits made by carrying on the said lumbering business, and bear the two-thirds losses, and George H. Long to have the one-third interest and profits made by carrying on the lumbering business, and bear the one-third losses."

Arthur B. Long died in 1884, leaving a will, which was duly probated in Pennsylvania,' and afterwards in this State. The property was given by the will, one-fifth of it to each of four children, and one-fifth to one child and his children, after providing the sum of $3,000 annually to his wife. The sum of $10,000 was to be held by George H. Long as trustee, and the income from it was to be paid annually to William J. Long as long as he lived. By a codicil, George H. Long and David W. Woods were made executors. The will contained these provisions:

"All of my estate, both real and personal, that is being and lying in the county of Clearfield and State of Pennsylvania, and now leased unto Robert Hasse Powell, the same bearing date the 11th day of June, 1872, and June the third, 1871, and that my executors or their executors or administrators shall continue the said lease with the said Robert Hasse Powell for the full term of ten (10) years after my decease, and the royalties that accrue from said coal or lease shall by my executors be paid to the above legatees, as prescribed in section second, at the end of each year after my decease.

" The lease made on the ninth day of July, 1881, by and between George H. Long and A. B. Long, for certain pine timber being and lying in Mecosta county and State of Michigan, and that my executors or their executors or administrators, and with the sawmill at Grand Rapids, with the adjoining lands to said mill for sidings and ground for sticking and drying lumber, shall continue and remain as they now are, for such use and purpose, until all the pine timber on the above-named lands shall be manufactured at said mill, and sold, and the moneys thereof made shall from such lumber shall by my executors or their executors or administrators shall at the end of each year divide among the above legatees, as specified in the above in section second, after my decease. Any other lands being or lying in

the State of Michigan, not mentioned above, shall be sold by my executors as soon as convenient after my decease. * * *

"I do by these presents give unto my executors, or a majority of them, or their executors or administrators, or a majority of them, full power and authority to grant, alien, bargain, sell, and convey by deed, and assign, all the said lands mentioned in this my last will, and any other lands or personal property I may have at the time of my decease, unto person or persons and theirs forever, in fee simple, by all and every such lawful ways and means in the law as to my said executors or their executors or administrators, or a majority of them, his or their counsel learned in the law, shall seem fit or necessary to be done."

Mr. Woods and Mr. Long qualified as executors; Mr. Woods having charge of affairs in Pennsylvania, and Mr. Long in this State. The business of lumbering was continued after the death of A. B. Long as it had been before, and the proceeds of the Michigan business were taken to Pennsylvania by Mr. Long, annually reported to the probate court, and distributed; the amount so taken by Mr. Long, and distributed, amounting to upwards of $500,000. Mr. Long also filed annual accounts in the Kent county probate court. The coal lands in Pennsylvania ceased to be productive in 1892 or thereabouts. The lumber was all manufactured in 1891 or 1892, and the mill in Grand Rapids was soon after that dismantled.

It is the claim of the executor that he had distributed the funds which came into his hands, amounting to upwards of a half a million of dollars, so that January 1, 1892, he had in his hands as executor but $134. In February of that year, he received upon a judgment a little over $600, which, he says, he had agreed to forward to the Pennsylvania executor, to help him pay the taxes on the coal lands. It is his claim that in October he was notified of an assessment against the Grand Rapids property of $2,400 for street improvements, and that there would be other taxes due, and that he had no money as executor with which to pay them. In January, 1895, he petitioned

the probate court for leave to mortgage the real estate, to enable him to pay the debts against the estate. The petition contained, among other things, the following statements:

"That the amount of personal estate of the said Arthur B. Long that has come into the hands of your petitioner is the sum of $386,385, of which only one or two hundred dollars remains undisposed of; that the debts outstanding against the estate of the deceased, as far as can be ascertained, amount to the sum of $2,000 or thereabouts; that the charges of administering the estate of the deceased, including future probable charges, amount to the sum of $800; that the expense of administration of the estate of the deceased will amount to the sum of $800.

"That the following is a description of all the real estate of which the testator died seised in the county of Kent, in the State of Michigan, namely: [Then follows a description of the lands and of their values.] That there is not sufficient personal estate in the hands of the executor, your petitioner, to pay the debts outstanding against the estate of the deceased, and the expense of administration; that it is necessary to borrow money by way of mortgage on the whole of the real estate of said testator above described, for the purpose of paying the debts against the estate of the deceased and the expense of administration; that the names and residences of all persons interested in said estate are as follows:  *  *  *  that it will be necessary, for the purpose of paying the aforesaid debts, expenses, and charges, to borrow the sum of $3,600 by way of mortgage upon such real estate.

"Your petitioner therefore prays that he may be authorized, empowered, and licensed to borrow said sum of money by way of mortgage upon such real estate, or some part thereof, as the court shall deem best, for the purpose of paying such debts, charges, and expenses, according to the provisions of the statute in such case made and provided."

Due notice was given of the hearing, and the court made an order authorizing the executor to borrow $2,666.66 for one year, at 6 per cent., and to give a mortgage upon the undivided two-thirds interest of the testator in the lands described in the petition. The executor gave, upon

the requirement of the court, a bond in the sum of $4,000, and took the oath required by statute. He arranged with the complainant, who is his wife, to borrow the money of her. He reported fully the arrangement to the probate court, and his action was approved and confirmed. No appeal was taken from any of these orders. On the same day the $2,666.66 mortgage was given, Mr. Long, as an individual, and as surviving partner of A. B. Long & Son, and as executor, and his wife, Kate E. Long, gave a mortgage on the undivided one-third interest which George H. Long owned in the same property, for $1,333.34, to Mr. Sheller, who is the brother of Mrs. Long; and the same day that mortgage was assigned to Mrs. Long, who paid over to Mr. George H. Long the sum of $4,000. It is to foreclose these mortgages that this suit is brought.

It is the claim of defendants there was no need of giving these mortgages, and that in the giving of them it was the purpose of the executor to acquire title to the property for much less than it is worth, and to deprive the other heirs of their interest in it. The defendants seek to attack in this proceeding the validity of the order made by the judge of probate, and have introduced the proceedings in the probate court, including the annual accounts which were filed prior to the making of the order. They also urge that Mrs. Long is not a good-faith holder of the mortgage. It is the contention of the complainant that she advanced the money upon the mortgages in the utmost good faith. She urges that the petition conferred upon the probate court jurisdiction authorizing the making of the mortgage, and its validity cannot be attacked in this proceeding.

The petition in this case complies with the provisions of the statute quite as fully as did the petition in the case of *Griffin* v. *Johnson*, 37 Mich. 87, in which case Justice CAMPBELL used this language:

"The allegations in this petition set up a sufficient state of facts, if true, to authorize the granting of a license. This being so, the truth or falsity of those allegations

cannot be inquired into collaterally. The court having jurisdiction, parties claiming under a mortgage made in pursuance of a license are not required to investigate the truth of those facts, but have a right to assume the court acted correctly. This doctrine has been settled by a long series of decisions of this court,"—citing many cases.

This doctrine has since then been followed in a large number of cases. *Norman* v. *Olney*, 64 Mich. 553; *Egan* v. *Grece*, 79 Mich. 629; *Pfirrman* v. *Wattles*, 86 Mich. 254.

It is said, notwithstanding the general rule that an order of this kind by the probate judge cannot be attacked collaterally, this order can be, for the reason it was made without the court having any jurisdiction to make it. It is the claim of counsel that the probate court was without authority to make the order, for the reason that the debt accrued after the death of Mr. Arthur B. Long, and such an order could not be made for a debt arising after his death; citing a number of cases, but relying especially upon the case of *Farrar* v. *Dean*, 24 Mo. 16. The Missouri statute differs from ours. It reads: "Where there are not sufficient personal estate and effects charged with the payment of the debts of any testator or intestate, it shall be the duty of the executor or administrator to apply," etc., and provides an order may be made for a sale of so much real estate as shall be necessary for the payment of the debts of the deceased. 1 Rev. Laws 1825, p. 106, § 40. Our statute provides the probate court may authorize the giving of a mortgage for the "purpose of paying the debts against the estate of any deceased person." 3 How. Stat. § 6105. This statute was construed in *Re Lambie's Estate*, 94 Mich. 489, where it was held a mortgage against land owned by the deceased, but not made by him, was such a debt as authorized the order, the court saying:

"There is no question here but that this estate, consisting only of this one parcel of land which has been pledged to pay this specific sum, is legally liable to pay this charge

upon it; and it can make no difference that deceased was not personally liable, but took this property subject to the pledge. * * * In the present case the language of the statute is 'debts against the estate.' Is not this mortgage debt one against the estate,—against the property of the estate? Is not the estate—the property of the estate—charged with its payment? Is it not legally liable for its payment? The word 'debts,' in the statute, should be given its ordinary signification, rather than a technical construction, which would be contrary to the practical construction which has been given it up to the present time."

A large proportion of the amount authorized to be raised was for assessments and taxes against the lands of the testator. Is not the estate—the property of the estate—chargeable with the payment of these taxes? And, if they were not paid, would not the land be sold? It was the duty of somebody to pay the tax. But it is said so much time has elapsed since the death of Mr. Long that this real estate ought not to have been under the control of the executor, but should have been partitioned. It is sufficient to say the statute gives the executor possession of the real estate until the estate is settled, or until delivered over by the order of the probate court to the heirs. 2 How. Stat. § 5875. The estate had not been closed; the executor had not filed his final account; none of the heirs had asked for partition; and, until some of these things were done, it was not only proper, but it was the duty of the executor, to pay the taxes, and prevent the property from being sold for taxes.

It is claimed there are included, in the amount for which the mortgage was given, items for needless and unauthorized litigation. The executor gave a bond at the time the mortgage was given. He will have to give an account to the probate court of his expenditure of the money received on account of the mortgage. We have already seen that debts were in existence, giving the court jurisdiction to act. The probate court, rather than here, is the proper forum to decide in the first instance whether the money has been properly expended.

It is urged the executor had upwards of $30,000 in his hands that he had improperly retained in the way of compensation, and that this order ought not to have been made. We have already said that the petition was sufficient to confer jurisdiction upon the court, and that his order cannot be attacked in this collateral proceeding. The executor has not filed his final account. If he has received moneys for which he has not properly accounted, the probate court or the court in chancery is entirely competent to deal with that question in a proceeding in which it is directly involved.

There are other questions raised by counsel, but, in view of the effect of the order made by the probate judge, we do not think they can be raised in this proceeding, and it will not be profitable to discuss them further.

It is urged in defendants' brief that the decree authorizes the sale of the entire property, instead of authorizing the sale of a two-thirds interest therein on one mortgage, and a one-third interest therein on the other. The language of the decree is somewhat ambiguous, and it may be modified in that respect so that there can be no question about its meaning. When so modified, it will be affirmed, with costs to appellees.

The other Justices concurred.