PORTER v. LONG.

1. PARTNERSHIP—SURVIVING PARTNER—RIGHT TO COMPENSATION.
   It was the intention of a father and son, who composed a partnership, that the business of the firm should continue until certain contracts made between the father and the firm were fully performed. These contracts had not been performed at the father's death. The father lived in Pennsylvania, and the son in Michigan, where the business was conducted solely by him, he receiving no compensation except his share of the profits. *Held*, that the son, as surviving partner, was not entitled to compensation for managing the firm business after the father's death.

2. EXECUTORS AND ADMINISTRATORS—ACCOUNTS—CONCLUSIVENESS.
   On a bill to compel an accounting by defendant in the respective capacities of surviving partner and executor of his partner's will, moneys wrongfully withheld by him from the estate as compensation for managing the firm business, which have never entered into his annual accounts as executor, should be charged against him, though such annual accounts have been duly approved by the probate court.

3. SAME—LITIGATION FOR ESTATE—ALLOWANCE FOR EXPENDITURES.
   Where litigation conducted by an executor related to property of the estate, and the questions involved were such that lawyers of good repute would differ as to their proper solution, he was entitled to an allowance for expenditures made in such litigation.

4. SAME—INVENTORY OF ASSETS—MISTAKE.

An executor in his final account is not bound by an inventory of assets, made soon after his appointment, which by mistake showed larger assets than belonged to the estate.

5. SAME—SHORTAGE—FRAUD.

Where an executor fraudulently had a short scale of timber made, which had been sold by the testator to a firm composed of the executor and testator, such executor would be compelled to account for the shortage.

Appeal from Kent; Grove, J. Submitted June 7, 1900. Decided September 13, 1900.

Bill by Millie C. Porter and others against George H. Long, executor of the last will and testament of Arthur B. Long, deceased, and surviving partner of the firm of A. B. Long & Son, and Horace J. Culbertson, trustee under such will, for an accounting. From the decree rendered, all parties appeal. Modified.

*Butterfield & Keeney*, for complainants.

*Crane, Norris & Stevens*, for defendants.

MOORE, J. A reference to the case of *Long* v. *Landman*, 118 Mich. 174 (76 N. W. 374), will make it unnecessary to make so long a statement of what is involved in this case as would otherwise be necessary. After that case was decided, this bill was filed by the complainants, who represent four of the five shares into which the will of Arthur B. Long divided his estate, the other share of which is represented by George H. Long. The purpose of the proceeding is to obtain from George H. Long, as surviving partner of the firm of A. B. Long & Son, an accounting of its affairs, and also to obtain from him, as sole executor for the State of Michigan, an accounting of the affairs of the estate of Arthur B. Long, deceased. In the court below, the following decree was made:

" 1. That the defendant George H. Long, as surviving partner of the firm of A. B. Long & Son, is entitled to a

reasonable compensation for all services rendered by him from June 24, 1884, in carrying on, with the original capital, good will, and assets of such firm, a general lumber business, in excess of mere winding up the affairs of said firm.      But defendant George H. Long cannot receive double compensation for receiving and disbursing the same funds; that is, from his compensation as surviving partner must be deducted the commissions allowed to him by the orphans' court of Mifflin county, Pennsylvania, for receiving and disbursing the amounts paid over by said George H. Long out of the firm assets, property, and profits of the firm of A. B. Long & Son.

"2. That all and singular the first, second, third, fourth, fifth, sixth, seventh, eighth, and ninth annual accounts rendered by the defendant George H. Long, as executor for Michigan, to the probate court for the county of Kent, in the State of Michigan, and by that court, pursuant to the statutory notice previously given, regularly settled, are conclusive as to all matters contained in them.

"3. That the defendant George H. Long properly brought the ejectment suit against the Chicago & West Michigan Railway Company, and properly defended the ejectment suit against the Chicago & West Michigan Railway Company, and properly defended the chancery suit brought against him by the Kent Furniture Company and the Chicago & West Michigan Railway Company.

"4. That all and singular the partnership accounts between the firm of A. B. Long & Son and Arthur B. Long and George H. Long, and the accounts between the two partners, were settled December 31, 1883, and such settlement was entered upon the books of account of such firm, and that neither party to this suit is at liberty to go behind such settlement so made and entered on such books; and the accounting hereafter directed is only to include transactions and matters since December 31, 1883.

"5. That the said cause, together with all testimony, exhibits, depositions, settlements, papers, and books of account, to be referred to William B. Brown, a circuit court commissioner of said county of Kent, to take and state an account:

"*First.* Of all the proceeds received by the defendant George H. Long as surviving partner of the firm of A. B. Long & Son, plus all sums deducted by the said defendant George H. Long as compensation for his services as surviving partner.

"*Second.* Of all sums received by him as executor of Arthur B. Long, deceased, in the State of Michigan.

"*Third.* Of the amounts paid by him as executor in Michigan to himself as executor in the State of Pennsylvania.

"*Fourth.* Of the amount of the personal estate of Arthur B. Long upon which George H. Long, as executor in the State of Pennsylvania, received commissions, and the amount of commissions so actually received by the defendant George H. Long as executor in Pennsylvania.

"*Fifth.* Of the amount of the commissions on the personal estate of Arthur B. Long in the State of Michigan received by the defendant George H. Long as executor in Michigan.

"*Sixth.* That the commissioner report the amount of commissions the defendant George H. Long, as executor in the State of Michigan,. would be entitled to if commissions should be allowed to him as ancillary executor in Michigan.

"*Seventh.* Of the amount received by him as executor, if any, from the farm of Arthur B. Long in Millbrook township, Mecosta county, Michigan, and the disposition of the same.

"*Eighth.* Of the amount of the personal estate of Arthur B. Long in Michigan, not including amounts paid for log stumpage nor for shingle stumpage, nor from his individual estate, but derived solely from the business carried on by the defendant, as surviving partner of the firm of Arthur B. Long & Son, from the death of Arthur B. Long, June 24, 1884, and from the assets of said firm.

"*Ninth.* Of the amount due from the defendant George H. Long, as surviving partner, to the executor of the will of Arthur B. Long, deceased, in the State of Michigan, under the contract of date July 9, 1881, for log stumpage, in accordance with the terms of that contract, and of the amount due from the defendant George H. Long, as surviving partner, to the aforesaid executor in Michigan, under the contract of date December 5, 1882, for shingle stumpage, according to the terms of such shingle-stumpage contract.

"*Tenth.* Of the amount received by him, as surviving partner, from the farm of Arthur B. Long, deceased, in Millbrook township, Mecosta county, Michigan, and the disposition of the same.

"*Eleventh.* Of the amount paid by the defendant George H. Long, as surviving partner, for highway taxes in Millbrook township, and the dates and amounts of such payments.

"*Twelfth.* Of the amount, if any, paid by defendant George H. Long, as executor in Michigan, for highway taxes in Millbrook township, Mecosta county, Michigan.

"6. That the complainants and defendants have leave to take before the commissioner additional testimony in respect to what would be a reasonable compensation for the defendant George H. Long, as surviving partner of A. B. Long & Son, for all services in excess of mere wind-

ing up, and upon such testimony, and upon all other testimony in the case, the commissioner report what would be a reasonable compensation for the defendant George H. Long, as surviving partner, for all services rendered by him in excess of mere winding up.

"7. That the complainants and defendant have leave to take additional testimony in respect to the disposition by the defendant, as surviving partner, of the four thousand dollars ($4,000) received by the defendant, as surviving partner, under the mortgages executed by the defendant, as executor and surviving partner, to Kate E. Long, and the reasonableness and propriety of such disposition.

"8. Of the disposition of the sum of four thousand dollars ($4,000) received by him, as surviving partner, under the two mortgages of date February 1, 1895, executed by him, as surviving partner and executor in Michigan, to Kate E. Long, and in the pleadings in this case mentioned.

"9. The parties to this cause have leave to apply to this court for permission to take additional proofs before the said commissioner on any of the points herein referred at any time prior to the conclusion of the hearing before the commissioner.

"10. That the commissioner, with his report and schedules, return all books, papers, documents, testimony, and depositions to the clerk of this court.

"11. That the effect of the statute of limitations, the effect of laches of the complainants, if any, and the question of double compensation paid to the defendant George H. Long, if any, is hereby reserved until the final decree of this court, in respect to all and singular the claims and demands of the complainants.

"12. That the right of the defendant, as executor in Michigan, to commissions upon the sums received and collected by him, and the question of costs, are hereby reserved until the final decree of this court.

"13. The commissioner is ordered to state the account, debit and credit, on each and every of the items hereinbefore referred to him for his consideration."

On October 16, 1899, upon showing by affidavit, an order was made by the court, and filed, extending time to settle case until December 28th, inclusive.

While the record and briefs are very long, the legal questions involved are not very complicated. Following the order in which the questions were decided in this

decree, the first item which requires our attention is a charge of $6,000 a year made for six years by George H. Long for the management of the business of A. B. Long & Son after the death of Arthur B. Long. To pass upon this item intelligently, in addition to the articles of partnership and the provisions of the will which appear in the case of *Long* v. *Landman*, 118 Mich. 174 (76 N. W. 374), it should be said that Arthur B. Long, during all the time he was associated with his son, was a resident of Pennsylvania, and there is nothing in the record to indicate that he did not expect to remain a resident of that State as long as he lived. George H. Long was a resident of Michigan, and the business of A. B. Long & Son was conducted in Michigan, and the articles of partnership expected it would be so conducted. Prior to 1881 Arthur B. Long was the owner of a large quantity of valuable pine timber, when agreements reading as follows were made:

"This agreement, made and entered into this ninth day of July in the year one thousand eight hundred and eighty-one, by and between Arthur B. Long, of Lewistown, Mifflin county, Pennsylvania, of the first part, and A. B. Long & Son, a copartnership firm doing business in the city of Grand Rapids, Kent county, Michigan, composed of the said Arthur B. Long and George H. Long, of said city of Grand Rapids, parties of the second part: *Whereas*, the said parties of the second part have for a long time been associated together as copartners in the business of buying, selling, and manufacturing lumber in said city of Grand Rapids, and are now so associated together, under and by virtue of articles of agreement made and entered into by and between said parties of the second part on the first day of April in the year one thousand eight hundred and seventy-eight; and *whereas*, said parties of the second part hope and intend to continue their said copartnership and to carry on the business aforesaid until the timber hereinafter described shall have been manufactured into lumber:

"Now, therefore, this agreement witnesseth, that said party of the first part, for and in consideration of the covenants and agreements hereinafter contained, to be kept and performed by said parties of the second part, agrees

to sell, and hereby does sell and convey, to said parties of the second part, all the white-pine timber standing and being on the following-described land, situated in the county of Mecosta and State of Michigan, to wit: * * *

"Said parties of the second part agree, in consideration of the premises, to pay to said party of the first part the sum of four dollars per thousand feet, board measure, for all the white-pine timber standing or being upon the lands above described, in manner following: On or before six months after each season's cut is scaled, said second parties shall pay said first party for all the white-pine timber cut and scaled on said premises during the preceding season, at the price per thousand feet above stipulated; said timber to be scaled in the log straight and sound, according to Doyle's rule for scaling logs. Said second parties further agree to cut said timber at the rate of from five to ten million feet, more or less, each year, commencing when said timber shall be needed to stock the sawmill of said second parties, situated in said city of Grand Rapids.

"It is mutually agreed by the parties hereto that the title to said timber shall pass to and vest in said parties of the second part upon the execution and delivery of this agreement.

"It is further mutually agreed that this contract shall be binding upon the heirs and representatives of the parties hereto."

"This agreement, made and entered into this fifth day of December in the year of our Lord one thousand eight hundred and eighty-two, by and between Arthur B. Long, of Lewistown, Mifflin county, Pennsylvania, of the first part, and A. B. Long & Son, a copartnership firm doing business in the city of Grand Rapids, Kent county, Michigan, composed of the said Arthur B. Long and George H. Long, of said city of Grand Rapids, of the second part, witnesseth: *Whereas*, by contract in writing bearing date the ninth day of July, 1881, said party of the first part sold, and said parties of the second part bought, all the white-pine timber standing and being on the following-described land, situated in the county of Mecosta and State of Michigan, to wit: * * * *Whereas*, there is and will be a large quantity of off-falls and shingle timber upon said land, not covered by the terms of said contract:

"Now, therefore, the said party of the first part agrees to sell, and hereby does sell and convey, to the said parties

of the second part, all the pine off-falls and shingle timber
standing or being upon said land.    And said party of the
first part further agrees to, and hereby does, give, grant,
and convey to said parties of the second part all the hard-
wood timber on said land which may be needed by said
parties of the second part in carrying on lumbering opera-
tions upon said land, for making roads, and for other pur-
poses.    And said party of the first part hereby gives and
grants unto said parties of the second part the right to
enter upon, and the right of way over, said land, and
every part thereof, for the purpose of cutting and remov-
ing the said off-falls and shingle timber; the same to be
cut and removed within a reasonable time after the com-
pletion of said contract of date July 9th, 1881.

"Said parties of the second part agree, in consideration
of the premises, to pay to the said party of the first part
the sum of forty (40) cents per thousand for all clear A or
star shingles manufactured from said off-falls and shingle
timber; payment to be made on or before the first day of
November in each year for the shingles manufactured
during the year preceding; said parties of the second part
to pay nothing for the seconds and culls manufactured
from said off-falls and shingle timber.

"It is mutually agreed by the parties hereto that the
title to said off-falls and shingle timber shall pass to and
vest in said parties of the second part upon the execution
and delivery of this agreement.

"It is further mutually agreed that this agreement shall
be binding upon the heirs and representatives of the parties
hereto."

After these contracts were made, the business of A. B.
Long & Co. consisted almost wholly in working up this
timber, and putting the product thereof upon the market.

It is the contention of complainants that, in the absence
of special agreement, a partner is not entitled to compen-
sation for services in the common business,—citing *Heath*
v. *Waters*, 40 Mich. 457; *Major* v. *Todd*, 84 Mich. 85
(47 N. W. 841); *Pierce* v. *Pierce*, 89 Mich. 233 (50 N.
W. 851).    They contend that the surviving partner is not
entitled to any compensation for services in winding up
the partnership business (citing *Heath* v. *Waters*, 40
Mich. 457; *Loomis* v. *Armstrong*, 49 Mich. 521 [14 N.

W. 505], 63 Mich. 355 [29 N. W. 867]; *Beatty* v. *Wray*, 19 Pa. St. 516 [57 Am. Dec. 677]; *Brown* v. *McFarland's Ex'r*, 41 Pa. St. 129 [80 Am. Dec. 598]; *Tillotson* v. *Tillotson*, 34 Conn. 335; *Little* v. *Caldwell*, 101 Cal. 553 [36 Pac. 107, 40 Am. St. Rep. 89]; *Smith* v. *Knight*, 88 Iowa, 257 [55 N. W. 189]; *Starr* v. *Case*, 59 Iowa, 491 [13 N. W. 645]; *Washburn* v. *Goodman*, 17 Pick. 519; *Johnson* v. *Hartshorne*, 52 N. Y. 173, 180; *Denver* v. *Roane*, 99 U. S. 355; *Appeal of Shriver*, 118 Pa. St. 427, note [12 Atl. 553]; *Shelton* v. *Knight*, 68 Ala. 598; *Scudder* v. *Ames*, 89 Mo. 496 [14 S. W. 525]; *Berry* v. *Jones*, 11 Heisk. 206 [27 Am. Rep. 742]; *Piper* v. *Smith*, 1 Head, 93; *Cooper* v. *Reid's Adm'r*, 2 Hill, Eq. 549; *Buford* v. *Neely*, 2 Dev. Eq. 481; *Frazier* v. *Frazier*, 77 Va. 775), and that a partner who is appointed receiver to wind up the firm business is entitled to no compensation for his services in winding up the partnership affairs (citing *Berry* v. *Jones*, 11 Heisk. 206 [27 Am. Rep. 742]; *Wilson* v. *Greenwood*, 1 Swanst. 484; *Blakeney* v. *Dufaur*, 15 Beav. 44; *Sargant* v. *Read*, 1 Ch. Div. 603; *Brien* v. *Harriman*, 1 Tenn. Ch. 467; *Todd* v. *Rich*, 2 Tenn. Ch. 107; *Doupe* v. *Stewart*, 13 Grant [U. C.], 641; *Kemp* v. *Jones*, 12 Grant [U. C.], 260). We think these authorities fully sustain the contention of counsel.

It is urged upon the part of defendant that, conceding the rule to be as above stated, it does not apply to the facts of this case, but, as the partnership agreement did not contain any stipulation that upon the decease of one of the partners the business should be continued by the surviving partner, the firm was dissolved by the death of A. B. Long,—citing *Crawshay* v. *Maule*, 1 Swanst. 495; *Gillespie* v. *Hamilton*, 3 Mad. 251; *Roberts* v. *Kelsey*, 38 Mich. 602; *Jenness* v. *Carleton*, 40 Mich. 343; *Hoard* v. *Clum*, 31 Minn. 186 (17 N. W. 275). He also claims the subsequent agreements did not contemplate a continuance of the business of the firm after the death of a member of it. It is also insisted that the will did not authorize

the defendant Long, as executor, to carry on the business
of the firm; that the court cannot act on a bare conjecture,
and there must be a most distinct and positive authority
and direction given by the will for that purpose (citing
*Kirkman* v. *Booth,* 11 Beav. 273; *Willis* v. *Sharp,* 113
N. Y. 586 [21 N. E. 705, 4 L. R. A. 493]; *Stewart* v.
*Robinson,* 115 N. Y. 328 [22 N. E. 160, 163, 5 L. R. A.
410]), and therefore it was the duty of the defendant, as ·
surviving partner, to wind up the business of the firm (cit-
ing *Frey* v. *Eisenhardt,* 116 Mich. 160 [74 N. W. 501];
*Freeman* v. *Freeman,* 136 Mass. 260).   It is then argued:

"The defendant, as surviving partner, after the dissolu-
tion of the firm by the death of his partner, carried on the
business of the firm for years, using the good will and
property of the firm, and, after paying all the firm debts,
made large profits, which were divided between the estate
of his deceased partner and himself in proportion to the
capital stock contributed by the respective partners, and
according to the partnership agreement.   The defendant,
under  these circumstances, was 'entitled to deduct from
the gross profits a reasonable compensation for his services,
before making such division,"—citing *Brown* v. *Litton,* 1
P. Wms. 140; *Brown* v. *De Tastet,* 1 Jac. 284; *Cook* v.
*Collingridge,* Id. 607; *Crawshay* v. *Collins,* 2 Russ.
325; *Wedderburn* v. *Wedderburn,* 2 Keen, 722; *Willett* .
v. *Blanford,* 1 Hare, 253; *Hite's Heirs* v. *Hite's Ex'rs,*
1 B. Mon. 177; *Holden's Adm'rs* v. *McMakin,* 1 Pars.
Eq. Cas. 270; and many other cases.

The learned counsel make an elaborate argument, cov-
ering more than 100 pages of their brief, arguing these
propositions, and making. an analysis of the cases cited.
The learned counsel for complainants have also devoted
a good many pages of their brief to these propositions
and the authorities.   It is evident that we cannot, in this
opinion, dilate upon the views expressed by counsel, but
must content ourselves with stating briefly our conclusions.

The articles of copartnership, the contract for stumpage,
the shingle contract, and the will of Arthur B. Long are
somewhat inartificially drawn, and it is evident that they
are not the work of a trained legal mind; but it is difficult

to read them in connection with the relations of the parties, and come to any other conclusion than that it was expected by the parties thereto that the business of A. B. Long & Son would continue until the contracts made between Arthur. B. Long and A. B. Long & Son were fully completed. These contracts had not been performed at the time of the death of A. B. Long, and it was the duty of the surviving partner to complete them. *Davis* v. *Sowell*, 77 Ala. 262; *Ayres* v. *Railroad Co.*, 52 Iowa, 478 (3 N. W. 522). This was the practical construction put upon the contracts by George H. Long himself. He continued the business as that of A. B. Long & Son; as executor, he dealt with the business as that of A. B. Long & Son; and the profits of the business were divided upon the basis, ostensibly, of the contract made between Arthur B. Long and A. B. Long & Son. We think it equally clear that it was not contemplated that George H. Long should have any compensation for the work done by him in the conduct of the partnership business, but that he should content himself with the share of profits which should come to him. The contract made between his father and the firm was an exceedingly favorable one for George H. Long. As before said, his father lived in Pennsylvania. George lived here. The business was here. It was contemplated that George would look after it. He did nothing more in that respect after his father's death than he was expected to do had his father lived. We think his charge of $6,000 a year as partner was not a proper charge, and that his compensation for managing the business is confined to his share of the profits.

It is urged that he filed annual accounts in probate court, and had an annual accounting, and that this item cannot now be questioned. It is a sufficient reply to that position to say that this charge does not appear in the annual accounts, and the $36,000 withheld by George H. Long, a member of the firm of A. B. Long & Son, never passed into possession of George H. Long, executor, and did not enter into the account of the latter at all in the probate court.

George H. Long, as executor, rendered annual accounts to the probate court for the county of Kent. The court below held that, as to the first nine of these accounts, they are conclusive as to all matters contained in them. This holding is in harmony with the recent case of *Morton v. Johnston, ante,* 561 (83 N. W. 369). But, as was said in that case, "Had there been any omission of credit or concealment of assets, a different rule would apply."

George H. Long, as executor, brought an ejectment suit against the Chicago & West Michigan Railway Company, and was made defendant in a chancery suit brought against him by the Kent Furniture Company and the Chicago & West Michigan Railway Company. The court below held that he should be reimbursed because of any expenses incurred by him in this litigation. It is urged upon the part of the complainants that they were not consulted in this litigation, that it was wholly unnecessary, and that George H. Long should bear the expense himself. The litigation was in relation to property belonging to the estate. The questions involved were such that lawyers of good repute would differ as to the proper solution of them. We agree with the circuit judge that the defendant should be made good for any expenditures made by him in this litigation.

Soon after defendant Long was appointed executor, he caused an inventory of the assets of the estate to be made, in which inventory it appeared that there was nearly 51,000,000 feet of pine timber yet unmanufactured, which was embraced in the contract between A. B. Long and A. B. Long & Son. It is claimed that George H. Long fraudulently arranged to have a short scale made of this timber, resulting in a shortage of nearly 19,000,000 feet, for which A. B. Long & Son have not accounted to the estate of A. B. Long. It is urged upon the part of the defendant that the woods scale ought to control, and that there is no occasion to open up this question. If it is true that this scale was a short one, and that it was purposely made so by the direction of the defendant, it ought not to

control. If any mistake was made in the inventory, and there was not in fact as much timber when scaled in the manner that the contract provides it should be scaled, George H. Long should not be bound by the inventory. It is his duty in good faith to account for all of the timber which came into the hands of A. B. Long & Son, and he should not be required to account for any more. To arrive at this amount, it seems necessary to follow the course provided for in the decree.

Taking the case as it now stands, we are satisfied with the disposition made in the court below of the other questions raised by counsel. The decree will be modified in accordance with this opinion, and further proceedings had as directed in the decree made in the court below. The question of costs will wait the final disposition of the case.

The other Justices concurred.