PORTER *v.* LONG.

1. PARTNERSHIP — SURVIVING PARTNER — WRONGFUL APPROPRIA-
   TION OF FUNDS—LIABILITY FOR INTEREST.
   Where a surviving partner wrongfully withdraws money as
   his own from the partnership funds, he cannot claim immu-
   nity from the payment of interest thereon under the rule
   that a copartner is not chargeable with interest on sums
   withdrawn until dissolution; the partnership having been
   dissolved by the death of the copartner.

2. SAME—COMPOUND INTEREST.
   A surviving partner who wrongfully withdraws sums of
   money as salary, and also fraudulently misappropriates assets,
   is properly charged with interest on interest.

3. ANCILLARY EXECUTOR—RIGHT TO COMMISSIONS.
   Where an ancillary executor in Michigan, unnecessarily, and
   without authority from the Michigan court, takes the estate
   to Pennsylvania for distribution, and there asks and obtains
   a commission in excess of that allowed by the laws of this
   State, and the estate is closed in Michigan without any claim
   on his part for commissions, he is not, on a bill for an account-
   ing, entitled thereto.

Appeal from Kent; Perkins, J. Submitted January
14, 1904. (Docket No. 11.) Decided March 23, 1904.

Bill by Millie C. Porter and others against George H.
Long, executor of the last will and testament of Arthur
B. Long, deceased, and surviving partner of the firm of
A. B. Long & Son, impleaded with another, for an ac-
counting. From a decree for complainants, defendant
appeals. Affirmed.

*Butterfield & Keeney*, for complainants.

*Crane, Norris & Drew*, for defendant.

HOOKER, J. Arthur B. Long, a resident of Pennsylva-
nia, was the owner of large tracts of pine and a sawmill

in Michigan. He had also a two-thirds interest in a co-partnership lumber business, in which his son George had the remaining one-third interest, the articles of copartner-ship being in writing. This relation existing, Arthur B. Long entered into a contract on July 9, 1881, with the firm, whereby he allowed the firm to lumber the lands upon its agreement to pay $4 a thousand stumpage for logs. It is claimed, and this court has once found, that this was a contract of great liberality towards the son, George. See *Porter* v. *Long*, 124 Mich. 594 (83 N. W. 601). A month after the execution of the contract, Arthur B. Long made his will. Lumbering operations began under this contract about May, 1882, and on December 5, 1882, a contract was made between the same parties for shingle stumpage.

George H. Long resided in Michigan, and was active in the management of the copartnership affairs. Arthur B. Long continued to reside in Pennsylvania, where he had large business interests. He died on June 23, 1884. George H. Long carried on the business, as surviving partner, until 1890, in much the same way as it had been conducted before his father's death, and acted also as one of the executors of his father's estate. He made annual reports to the orphans' court in Pennsylvania of the alleged proceeds of the copartnership business, where such proceeds were distributed, and he also filed annual reports in the probate court for Kent county, Mich.

In February, 1895, George H. Long, as executor, mort-gaged the undivided two-thirds of the mill property in Grand Rapids under an order made by the Kent county probate court. This mortgage was for $2,666.66, and ran to George H. Long's wife. On the same day he and his said wife mortgaged the other one-third of the property to Mrs. Long's brother for $1,333.34, and the same day it was assigned to Mrs. Long, who paid over to her husband $4,000 for the two mortgages. These mortgages were afterwards foreclosed. George H. Long's brothers and sisters resisted the foreclosure proceedings, but without

avail. The case came to this court, and will be found reported in 118 Mich. 174 (76 N. W. 374), under the title of *Long* v. *Landman*.

The trial of that cause developed much feeling between George H. Long and his brothers and sisters, and its final disposition was followed by the filing of a bill for accounting; *i. e.*, the bill in this cause. A decree was made settling some of the questions raised, and sending the case to a commissioner to state the account. An appeal was taken, and the case is reported in 124 Mich. 584 (83 N. W. 601). The case has since been to the commissioner, whose report to the circuit court was confirmed in most particulars, and we are asked by defendant George H. Long to review the decree.

The questions to be considered are stated in defendant's brief as follows:

"1. Whether or not the defendant, as surviving partner, is chargeable with the sum of $7,078.70 for additional stumpage, and $8,848.37 interest thereon, or with any sum whatsoever for stumpage, beyond the woods scale of the stumpage, as appears on the books of A. B. Long & Son, and for which he had accounted before bill filed.

"2. Whether or not the defendant, as surviving partner, is chargeable with the sum of $24,348.87 for interest upon the sum of $19,200 as part of salary drawn out of the firm, or any sum whatsoever, beyond the sum of $16,775.50, paid into court by the defendant on the 27th day of October, 1900.

"3. Whether or not the defendant is chargeable with the sum of $108.05 for a duplicate credit for the taxes of 1884, and $114.40 interest thereon, or any sum whatsoever.

"4. Whether or not the defendant is chargeable with the sum of $45.72 for the additional stumpage value of 114,296 feet of hemlock cut by the defendant on the land of A. B. Long in Millbrook township, but not under the contract of July 9, 1881, and interest on the same, $36.18, or with any sum whatsoever for hemlock stumpage.

"5. Whether or not the defendant is chargeable with a certain proportion of the rent of the house of A. B. Long situated in Millbrook township, and interest on the same,

and the proofs should be again opened to show the rental value, if any.

"6. Whether or not the estate of Arthur B. Long, deceased, was administered in the probate court for the county of Kent, in the State of Michigan, by the defendant.

"7. Whether or not the defendant was entitled to his statutory commissions upon the sum of $557,048.27, collected and accounted for by him as executor of the estate of A. B. Long, deceased, in Michigan.

"8. Whether or not the payment into court by the defendant of the sum of $16,775.50 was not a full payment of the defendant's liabilities to the complainants.

"9. Whether or not the defendant is chargeable with the bill of Commissioner Brown of the sum of $900 for 45 days' work at $20 per day.

"10. Whether or not the defendant is chargeable with all the costs of the accounting."

*Stumpage.* A large amount of testimony appears in the record, and an extended discussion is made in the briefs, of the circumstances which, in the absence of satisfactory bookkeeping, are relied on to determine the amount of stumpage chargeable to the firm. We are of the opinion that the evidence fully justifies the conclusion reached by the circuit court that the estate was defrauded through a short scale. It is claimed that the will contemplated an annual distribution of the estate's share of the proceeds of this business, and George H. Long seems to have so construed it, for he claims to have distributed annually the available assets, even to the extent of reducing the same to $134, and making it necessary to mortgage the mill property to provide money to pay taxes and assessments. The sum due the estate for timber not accounted for was converted to other uses,—that is to say, it was treated as profits, and divided as such, George H. Long receiving his one-third as copartner; whereas it should have been paid to the executor, and divided, in which case he would have received but one-fifth of said one-third. It follows that the commissioner was right in finding that four-fifths of the sum so appropriated, with interest, was due to these

complainants from George H. Long. It is what rightfully belonged to them of the money given to him from this item in the distribution of estate funds. There is no reason why he should not pay interest upon the same from the various dates upon which he received it.

No controversy should arise over complainants' claim to a share of the amount wrongfully taken for salary. It was settled by our former decree, and we are of the opinion that the court correctly held, that George H. Long was not entitled to compensation for his services in closing up the copartnership affairs. It was proper to compute interest upon the installments of interest upon both the shortage and the amount taken as salary, the sums being fraudulently or wrongfully taken in both instances. There is no equity in the claim of immunity from payment of interest under the rule that a copartner is not chargeable with interest until dissolution upon sums withdrawn from the copartnership funds. The sums in each instance were taken by George H. Long as surviving partner under a claim that they were his own,—the salary upon a claim for services, and the remainder as profits upon a distribution. He sustained the relation of trustee, and was recreant to the same, availing himself of his opportunity to despoil the copartnership of its funds and his copartners of their shares. We understand that death dissolved this copartnership, and that the rule is general that a surviving partner who appropriates the funds of the concern to his own use is chargeable with interest. See *Hannahs* v. *Hannahs*, 68 N. Y. 610; *Crabtree* v. *Randall*, 133 Mass. 552; *Dunlap* v. *Watson*, 124 Mass. 305; *Donahue* v. *McCosh*, 70 Iowa, 733 (30 N. W. 14); *Allen* v. *Woonsocket Co.*, 13 R. I. 146. Our own case of *Heath* v. *Waters*, 40 Mich. 457, indicates the fallacy of defendant's claim. It is there held that a surviving partner is a trustee, and chargeable with interest for misappropriation of the copartnership funds. See *Loomis* v. *Armstrong*, 49 Mich. 525 (14 N. W. 505); *Blodgett* v. *City of Muskegon*, 60 Mich. 589 (27 N. W. 686); *Perrin* v. *Lepper*, 72 Mich.

553, 556 (40 N. W. 859); *Killefer* v. *McLain,* 78 Mich. 252 (44 N. W. 405).

We think it unnecessary to discuss the small items numbered 3, 4, and 5 further than to indicate our approval of the decree in relation to them.

The eighth item is covered by what has been said. It is obvious that the payment into court of $16,775.50 was not a full payment of defendant's liabilities.

Items numbered 6 and 7 raise questions relating to the statutory commissions claimed by defendant upon the sum of $557,048.27, collected and accounted for by him as executor of the estate of A. B. Long in Michigan. The commissioner reported:

"I find from the evidence in the case, and hereby certify, that no part of the estate of A. B. Long was administered in the probate court for the county of Kent, Michigan; that the moneys realized by George H. Long, as executor in the State of Michigan, were taken by him directly to the orphans' court of Mifflin county, Pennsylvania, and that the moneys realized by him as surviving partner of the firm of A. B. Long & Son in Michigan were turned over to himself as executor of the estate of A. B. Long, deceased, for the State of Pennsylvania. It will be observed that the accounts of the executors for each year, as filed in said orphans' court, Pennsylvania, bear date prior to the date of the accounts filed in the probate court for the county of Kent, covering the same period, and the Pennsylvania accounts in each instance contain statements of the Michigan business.

"The executors in the State of Pennsylvania received a commission of 5 per cent. on all of the moneys by them accounted for in that State, except an item of $17,000, farm in Derry township, upon which they received 3 per cent.; and that includes at 5 per cent. certain lots in the city of Grand Rapids and the farm in Millbrook township, which sold for $5,500. No part of the estate of A. B. Long, deceased, thus far realized, has been submitted by the executor in Michigan for administration in the probate court for Kent county.

"I find, as a matter of law, that George H. Long is not entitled to any commission as executor in Michigan on the moneys there realized from the estate of A. B. Long,

deceased. He received in Pennsylvania commissions on the same moneys larger in amount than those authorized by the laws of Michigan, and I find that those commissions allowed in Pennsylvania, and by him received, were designed to cover all services rendered by George H. Long in getting in the money, as well as in distributing the same. It will be observed that the item in the executors' accounts in Pennsylvania for fees bases its claim therefor for 'time, trouble, and services,' etc."

Counsel for defendant say:

"The orphans' court of Mifflin county, in the State of Pennsylvania, had no jurisdiction over the estate of the deceased in Michigan, nor over the ancillary executor; while the probate court for the county of Kent, in the State of Michigan, had exclusive jurisprudence over the estate of the deceased in Michigan, over the ancillary executor, and over the settlement of his accounts. The appellees claim that Mr. Long is not entitled 'to plunder the estate' with double fees; but the commissions claimed in Michigan are for services not rendered in the State of Pennsylvania, and for services rendered in the State of Michigan by the defendant."

The testimony shows that the estate in Michigan unnecessarily, and without authority from the Michigan probate court, was taken to Pennsylvania for distribution, and the executors there asked and obtained a maximum commission for a minimum of labor. The estate was afterwards closed in Michigan, and no allowance was made to the executors. The defendant testified that he never claimed any. We think he is not equitably entitled to any, even if, under any circumstances, compensation might be allowed in two jurisdictions, which we do not decide.

We do not overlook complainants' alleged laches in bringing suit. Neither do we think the point well taken.

We see no occasion to disturb the decree in regard to the allowance to the commissioner and costs. It is therefore affirmed, with costs of this court.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred. GRANT, J., took no part in the decision.