## DRUEKE v. BOYLON.

1. PARTNERSHIP—SEPARATE AGREEMENTS—JOINT OWNERSHIP.
   An agreement to convey to a purchaser at a fixed price half of property used in a livery business, which the parties thereupon proceeded to conduct as partners, by virtue of a further oral contract, made at the same time as a part of the same transaction, creates a partnership in the business and the property named.

2. SAME—DISSOLUTION BY DEATH.
   Upon the death of one partner the partnership is dissolved and the surviving partner becomes a trustee to wind up the business.

3. REFORMATION OF INSTRUMENTS—MISTAKE.
   To justify the reformation of a written instrument upon the ground of mistake in drafting the same, the alleged mistake must be proved by clear and satisfactory evidence and the mistake must have been mutual.

4. SAME—EVIDENCE.
   Testimony of an unsatisfactory nature elicited from one witness, that the agreement contained a mistake, contradicted by the subsequent dealings of the parties, and by inconsistent testimony of the defendant, does not warrant reformation of material provisions of the contract.

5. PARTNERSHIP—WINDING UP—ACCOUNTING.

The winding up in equity of a partnership which terminated upon the death of one partner, where the other continued thereafter to conduct the business, suffering a loss by fire, and where the interest of the estate is not clear, requires an accounting.

Appeal from Kent; Perkins, J. Submitted February 28, 1910. (Docket No. 125.) Decided March 19, 1910.

Bill by William Drueke, Jr., and George Egeler, administrators of the estate of Frank Koch, deceased, against Mary E. Boylon, for the appointment of a receiver to wind up the affairs of a partnership. Defendant filed an answer in the nature of a cross-bill to reform the schedule attached to the partnership agreement. From the decree rendered, defendant appeals. Reversed, and remanded for an accounting.

*Carroll & Nichols* (*George E. Nichols*, of counsel), for complainants.

*Charles E. Ward*, for defendant.

BLAIR, J. On the 18th day of November, 1907, Frank Koch and Mary E. Boylon entered into the following agreement in writing:

"This agreement, made the 18th day of November, 1907, between Mary E. Boylon of the city of Grand Rapids, county of Kent, State of Michigan, party of the first part, and Frank Koch, of the same place, party of the second part, for and in consideration of the sum of $3,500, witnesseth: That the said Mary E. Boylon, party of the first part, in consideration of the agreement hereinafter contained, to be performed by Frank Koch, agrees to sell and deliver to the said Frank Koch, party of the second part, one-half interest in her livery business, which are the property of Mary E. Boylon, party of said first part, and contained in and belonging to the livery business of the said Mary E. Boylon, the schedule of which hereunto is annexed, for the said sum of $3,500, which the said party of the second part hereby agrees to pay to the said

party of the first part, as follows: $1,000 cash on the signing of the agreement, $1,000 in stock, pertaining to their business, and the balance of $1,500 to be paid as follows: $500 on November 18, 1908, $500 on November 18, 1909, and $500 on November 18, 1910, with interest on all sums, at any time unpaid hereon, at the rate of 6 per cent. per annum, payable annually. It is agreed by the parties hereto, that the said party of the first part, on receiving payment in full of the said Frank Koch, installment of the principal and the interest thereon, will at her own proper cost and expense, execute and deliver to the said party of the second part, a bill of sale of one-half interest in her livery business.

"It is further agreed that the said party of the second part can pay at any time, $100 or more as he may deem best, the party of the first part agreeing to accept the same.

"Failure to make the payments required by this contract, by second party, shall terminate his rights hereunder and the arrangements shall thereby be terminated, and the payments made by the second party shall be forfeited to the first party as liquidated damages and all the property shall belong to the first party.

"It is further agreed that the party of the first part will assign one-half interest of her lease in the premises known as 156 North Ionia street in the city of Grand Rapids, county of Kent, State of Michigan, and it is agreed that the stipulations herein contained are to apply to and bind the heirs, executors, administrators and assigns of the respective parties hereto."

Frank Koch died December 30, 1907, and his administrators, being unable to come to an agreement with Mrs. Boylon relative to the interest of his estate in the property and business, filed this bill of complaint, alleging the existence of a partnership between the parties and praying:

"(a) That a receiver may be appointed by this court of said copartnership to take charge of all of its property and affairs and wind up the business of said copartnership to the end that the interest of the estate of the said Frank Koch, deceased, may be determined and paid over to your orators as aforesaid in order that the estate of the said

Frank Koch may be closed and assigned by the probate court.

"(*b*) That in case the court should determine that it would be inadvisable to appoint a receiver of said copartnership, then in that case defendant be compelled by this court to give to your orators a good and sufficient bond that she will immediately proceed and wind up the affairs of said copartnership under the order and direction and supervision of the court, and pay over to your orators such interests of the estate of said Frank Koch therein as shall be found by the decree of said court to be due to said estate."

The schedule of property attached to the written agreement contained the property described in the agreement as " $1,000 in stock pertaining to their business" as well as the property then owned by defendant. The property turned over by decedent was as follows:

"One (1) gelding, Sam; one (1) mare, Mollie B; one (1) mare, Jane; one (1) black mare, Nellie; one (1) gelding, Jim; one (1) Cunningham hack; one (1) number two hack; one (1) cab harness."

The third paragraph of defendant's answer is as follows:

"Answering the third paragraph of said bill, this defendant admits that at the time of the making of said written contract said Frank Koch and this defendant entered into a verbal contract to become copartners in the said livery business in the building then used and occupied by defendant, and that by the terms of said partnership agreement each of said copartners was to bear one-half of the expense of the conduct of said business and to share alike in the profits or losses growing out of said business, and that thereafter this defendant and said Koch did conduct said business as copartners until the death of said Koch on December 30, 1907; and that this defendant is the surviving partner of said copartnership, and since the death of said Koch this defendant has conducted a livery business at said place as before."

In the fourteenth paragraph she avers that:

"The agreement of purchase and sale aforesaid was

distinct and separate from the said agreement to form a copartnership."

Defendant claimed affirmative relief in her answer and prayed:

"That the said contract of purchase and sale be reformed by striking out of said schedule or inventory the said property as follows: One (1) gelding, Sam; one (1) mare, Mollie B; one (1) mare, Jane; one (1) black mare, Nellie; one (1) gelding, Jim; one (1) Cunningham hack; one (1) number two hack; one (1) cab harness."

After the cause was at issue, a portion of the property was destroyed by fire, and the insurance, amounting to $2,364, was paid into court under stipulation. Attached to each of said policies was the following clause:

"It is understood and agreed that a one-half interest in this property has been sold on a contract to Frank Koch, and loss, if any, payable to parties as their interest may appear."

After hearing the proofs the court entered a decree that:

"The said complainants do recover from the said defendant the sum of one thousand five hundred dollars with interest thereon from the 30th day of December, 1907, at the rate of five per cent. per annum, and that the said complainants do recover their costs in this suit, to be taxed by them, and that said sum of one thousand five hundred dollars together with the interest and costs aforesaid be paid to the said complainants by the register of this court out of the funds now in his hands deposited with him pursuant to a stipulation heretofore entered into between the parties hereto, and that the balance of said fund, whatever the same may be, shall be paid to the said defendant by said register after the payments have been made to the said complainants as aforesaid."

The defendant appeals to this court.

The most important question in the case is, What was the legal character of the admitted contractual relations of the parties? The complainants contend that the written contract and the oral contract were made at the same time, as parts of the same transaction, should be construed

together, and really formed a single contract. It is the claim of the defendant that the contracts were separate and distinct and that decedent Koch acquired no partnership interest whatever in the property. In our opinion, the proofs support the complainant's contention, and are utterly inconsistent with the defendant's claim. The defendant's testimony given before the probate judge in a proceeding in that court clearly demonstrates that she understood that the oral partnership contract was an essential and inseparable part, together with the written contract of the complete agreement between the parties, and they conducted the business from the outset upon the theory that they were equal partners in the livery business.

We do not credit the testimony of the scrivener that there was no present agreement of partnership, but that the making of such agreement was deferred and was to be a separate and distinct agreement. His testimony is inconsistent with defendant's testimony, the conduct of the parties and the probabilities of the case. The written agreement in terms relates to a half interest in the business of defendant and the property to be paid by decedent was stock " pertaining to *their business.*" The contemporaneous oral agreement of the parties and their conduct fully establish the fact that the half interest in the business referred to in the contract was a partnership interest, and defendant told one of the administrators that Koch " had a half interest in the business," and she admits the oral agreement of partnership and claims the right of a surviving partner in her answer. She further testifies:

"*Q.* And now, of course, his services, and his devoting his time—that is, that he would devote his time to the conduct of the business during the coming three years—was a part of the consideration for your entering into the agreement with him, was it not?

"*A.* Yes, sir."

We are satisfied that the partnership agreement was an essential part of the consideration, without which the

written contract would not have been made. The testimony shows clearly that Koch was not bargaining for an interest in the personal property without reference to the business, but that he was contracting principally with reference to the purchase of a half interest in the business, and the payments provided for were for payment of the purchase price of a half interest in the business and property. The parties so understood their contract, and so performed it until the death of Mr. Koch terminated the partnership. We are also of the opinion that the written contract, construed in the light of the conduct of the parties and their practical construction of its meaning, justifies the conclusion that the one-half interest in the business and the expression "their business" import an equal partnership interest, and not a tenancy in common. Mrs. Boylon's testimony indicates that she so understood it:

"*Q.* When did you enter into the copartnership with him?

"*A.* The 18th of November, 1907.

"*Q.* Was that agreement in writing?

"*A.* Yes, sir.

"*Q.* Then, aside from this paper, there was an agreement between you by which you were to enter into a copartnership in the livery business?

"*A.* What?

"*Q.* I say, aside from this, there was an agreement between you that you entered into a copartnership in the livery business?

"*A.* Why, yes; there was an agreement.

"*Q.* I want to know what your agreement was about going into the copartnership?

"*A.* That is the agreement. (Indicating.)

"*Q.* Was there anything else besides this about your copartnership?

"*A.* No, sir.

"*Q.* There was a verbal agreement and a verbal talk between you as to how you would go into the partnership, wasn't there, aside from this paper?

"*A.* Why, we were to go into a partnership of course, and agreed to it, according to that paper."

The agreement between the parties constituting a

partnership agreement as to the business and property, the dissolution of the partnership by the death of Koch made it the duty of defendant as surviving partner to wind up the business and account as trustee to the representatives of his estate. *Killefer* v. *McLain*, 78 Mich. 249 (44 N. W. 405); *Porter* v. *Long*, 136 Mich. 150 (98 N. W. 990).

We are also of the opinion that the record does not sufficiently show a mutual mistake in the scheduling of the property turned over by Koch to warrant a decree on the cross-bill reforming the contract. The testimony of the scrivener, which is the only competent testimony upon the subject and in the accuracy of which we have little faith, does not show a mutual mistake of fact. He testified, among other things:

"Fourteenth direct interrogatory. Was it by reason of the instructions of any person that the property turned over to Mrs. Boylon by Koch in payment of $1,000 on the contract price was included by you in the schedule attached to said contract? And if your answer to this is no, state fully the reason why you included said property in said schedule.

"Answer. I was so instructed by Frank Koch.

"Fifteenth direct interrogatory. If the legal meaning of said contract as drawn, is that one-half the property turned over by Koch to Mrs. Boylon in payment of $1,000 upon said contract, was to belong to Frank Koch on the payment of the balance of said $3,500, state whether such result would be or is a mistake, and whose mistake it is, and why said mistake was made. State fully, giving reasons why said mistake was not noticed or discovered by you at the time.

"Answer. I am unable to state at this time. It was the intention of Frank Koch to turn over this property as first payment under the contract to purchase the half interest in the business.

"Sixteenth direct interrogatory. If your answer to the previous interrogatory is that Mary E. Boylon was to permit the use of any of the property mentioned in the livery business by the copartnership between herself and Koch, state what, if anything, was said or agreed concerning

what the said Koch was to do in carrying on the said livery business.

"Answer. There was no partnership existing. He was to devote his time to the business until he had paid the balance due on the contract. If there was a loss during the winter months, which Frank Koch intimated, he was to share and share alike on loss. There was no partnership. He was to devote his time to the business until he had paid the balance due, and if there was a loss it was to be equally shared by them. * * *

"Twenty-first cross-interrogatory. Is it not a fact that at the time of execution of the contract which you drew between these parties, that Mrs. Boylon and Frank Koch agreed to and did become copartners in the livery business?

"Answer. No."

"To justify the reformation of a written contract upon the ground of mistake in drafting the same, the alleged mistake must be proved by clear and satisfactory evidence, and the mistake must have been mutual and common to both parties to the contract." *Kinyon* v. *Cunningham*, 146 Mich. 430 (109 N. W. 675).

We are satisfied that Mrs. Boylon understood that the property turned over by Koch was described in the schedule, as Koch certainly did, and the fact that the property was put into the livery barn and used in the business in common with the other property without additional charge to Koch or arrangement for charge for its use strongly indicates that, as the contract provides, it was to become part of the general stock in which Koch was to have a partner's interest.

We do not think, however, that the facts disclosed by this record are sufficient to warrant the decree as made. A portion of the property was destroyed, but what proportion does not appear, and the evidence is not sufficiently full to enable us to determine the interest of the executors in the surplus; this can only be determined by an accounting. We see no valid reason why an accounting should not be had without further delay. The decree of the circuit court is reversed and the record remanded for the purpose of an accounting and decree in pursuance of this opinion.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and STONE, JJ., concurred.